IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS

Roy Eugene Ussery,
      Petitioner

v.

Bobby Lumpkin. Director TDCJ
      Respondent

§
§
§
§
§
§

SUPPLEMENTAL PETITION FOR HABEAS

Cause No. 4:22-cv-03614

Judge Charles Eskridge

United States Courts
Southern District of Texas
**FILED**
JUN 04 2025
Nathan Ochsner, Clerk of Court

### SUPPLEMENTAL PETITION FOR HABEAS

    Petitioner Roy Ussery, respectfully submits this supplemental petition in this habeas proceeding. This is a supplement in that Petitioner does not mean to allow for all previous filings to be deleted or of no value; however, petitioner does wish for the grounds provided in this petition to amend or replace the previous grounds. This request is being submitted for supplement and amendment pursuant to FRCP 15. In support, petitioner will show the XXX following:

### I. Statement of the Case

    Petitioner has prepared grounds as best he can to this point. Pending before this court is petitioner's habeas corpus under XXXX 28 USC 2254. The grounds being submitted will simply add or complete work not previously able to be submitted dewspite diligence. ?Please accept these grounds.

    Petitioner again wants to make this court understand that for several years now. this unit has actively prevented me from contacting family or XX friends and have been receiving fraudulent mail posing as family whom I dop not believe wqrote the letters.

    I have written to courts. the DOJ. home. and written grievances on this matter; I believe someone is trying to steal the insurance claim attached to this petitionms or a fraud claim associated with it. I want this court to know I have NEVER issued any kind of power of attorney. I need help. I have asked this consi tently. This court has ignored me consistently

    Please respond or issue an order. I have been kidnapped and I am more or lessd beoing held for robbery purposes. And the culprits seem to be doing this with the help of the system and courts; Shouldn t it be the other way around Judge? Or you got .

    I need help. Please.

P. A1

# TABLE OF CONTENTS

Cover Page ...A1

Ground 1: Petitioner Denied His Right To Jury Trial When Convicted
Sentenced Wheree State Failed To Prove All Elements Beyond A
Reasonable Doubt: Acquittal Resulted ... 1

Ground Two: Petitioner's Conviction Is a Violation of Double Jeopardy .. 6
— *GROUND THREE: Illegal Sentence/Lack of Jurisdiction*   *p. 14A*
Ground 4: Trial Court Allowed To Pronounce Sentence For Offense Not
Submitted To Jury AndJudge Found Facts Necessary To Convict ..15A

Ground 5: Evidence is Legally And Factually Insufficient To Support
Conviction As No Evidence Supports Conviction 20
                                                        *24A-C*
Ground 10: Cumulatives Error For Grounds *6-9* 6 9 Denial Of Counsel/
And Denial Of Right To Speedy Trial 24X

Ground 12: Trial Court Constructively Amended The Indictment By
Instructing The Jury To Consider Date Range Prior Sept 2007N ..N26

Ground 13: Ineffective Assistance of Counsel For Failurwe To Meet
McCoy Requirements ...30

Request For Independent Consideration Of Conflict of Interest Claim
As Causing Plea Which Was unknowing and Involuntary (WIlth Ground 13) ...35

Grouond 20: Ineffective Assistance of Counsel As Counsel Provided
Incorrect Legal Alvice WElich Lead Ussery To BElieve
Acquittal Would Result ...38

Ground 21: Ineffective Assistance of Appellate Counsel For Failure To
Raise Charge Error and Date Fact Issue As Acquittal ...42

Ground 24: Trial Counsel Failed To Request Expert Witness; Cause To
Excuse Default Due To State's Brady Violationm & IAAC ...47

Ground 25-26: IĦeffective Assistance of Appellate Counsel In Failure To
Raise Improper Outcry Witness, Surprise Testimony of
Alleged Victim and Outcry WItness, And Denial of Right To
Call On Witness all In Denial Oļl Due Process ...52

Ground 27: Prosecutor's Arguments Improper And Amounted To Evidence Or
Testimonyu And Prosecutor's Comments Called Attenti9on To
Defendant's Silence ...57

Ground 28: Trial Court Error And/Or Inelļlective Assistance of Counsel
On AppealFor Failure To Raise Trial Court Failure To Hold
Faretta Hearing ...63
*GROUND 30: Actually Innocent/IAC Failure To Convet DV*   *... 66A*

· These grounds completed up to this point are being sent out in the inter-
est of time. Grounds 3, 6, and 30 have been started but are not yet complete
as far as an authoritative revision goes. Petitioner is doing as much as he can
although stress and anxiety is taking its toll and slowing the work as much
as the interference from those at this facility. Just what I've described
going on should entitleĦ me to counsel. Please assign me counsel; In the mean-
time I have written toȵ a potential attorney and am awaitᵻng response. Further
I have sent an Independent Action For Fraud To the Nortehern Dist. and intend
to perpetuate testimony there, however, I intend to also initiate a contract
dispute in the Court of Federal Claims in order to perpetuate testimony there
in case that turns out to be the more proper forum. Just FYI.

*P. A2*

PETITIONER DENIED HIS RIGHT TO JURY TRIAL WHEN CONVICTED/SENTENCED WHERE STATE FAILED TO PROVE ALL ELEMENTS BEYOND A REASONABLE DOUBT: ACQUITTAL RESULT (Ground 1)

Indicted and charged offense was for Aggravated Sexual Assault of a Child Under Six.Tex. P.C. 22.021(f)(1), an offense enacted Sept. 1, 2007. See Acts 2007, 80th Leg. ch.593. No offense which existed under statute PRIOR to Sept. 1, 2007 was submitted to the jury; jury's verdict on the Special Issue was that the State DID NOTprove an offense was committed on or after Sept. 1, 2007 (RR V10 p.107). Had the Special Issue reasonable doubt instruction been submitted in the guilt phase--an acquittal would have resulted.Judge's instructiion to sentence petitioner to uncharged offense without the jury finding expressly all facts beyond a reasonable doubt that such offense was committed (and committed PRIOR to Sept. 1, 2007), denied defendant his Sixth Amendment jury trial right after an acquittal had already resulted.

LEGAL ARGUMENT

As at the time of the Fifth Amendment's adoption, a judge's sentencing authority derives from and is limited by, the jury's actual finding of criminal conduct. A jury must find beyond a reasonable doubt every fact "which the law makes essential to [a] punishment" that a judge might later seek to impose. Blakely v. Washington, 542 U.S. 296, 304, 124 S.Ct. 2531, 159 L.Ed. 403. In Apprendi v. New Jersey, 530 U.S. 465, 120 S.Ct. 2348, 147 L.ED. 2d 435, the Supreme Court held unconstitutional a sentencing scheme that allowed a judge to increase a defendant's sentence beyond the statutory maximum based on the judges finding of new facts by a preponderance of the evidence. In Apprendi, the Court recognized "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties." 530 U.S. at 490, 120 S.Ct. 2348, 147L.ED. 2d 435. In Alleyne v. United States, 570 U.S. 99, 133 S.Ct. 2157, 186 L.Ed. 2d 314, the Court held that Apprendi's principle "applies with equal force to facts increasing the mandatory minimum." 570 U.S. at 111-112.It did not matter to Alleyne's analysis that even without the mandatory minimum, the trial judge would have been free to impose a 7-year sentence authorized by the judge's findings. Both the "floor" and "cieling" of a sentencing range define the legally prescribed penalty. Ibid. And under our Constitution when a finding of fact alters the legally prescribed punishment soa as to aggravate it "that finding must be made by a jury of the defendant's peers beyond a reasonable doubt."Id. at 114, 133 S.Ct. 2151, 186 L.Ed. 2d 314.

In the instant case, it first appears to be a sentencing factor error;

however, the actual issue is, whether considered as a charge error or faulty reasonable doubt instruction, the State failed to prove its case beyond a reasonable doubt.

### A. As a Sentencing Factor

In addressing the contention that the error is a sentencing factor error, petitioner relies on Jones v. United States, 526 U.S. 227, 143 L.Ed. 2d 311, 119 S.Ct. 1215 (1999); Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed. 2d 856 (2007); Ring v. Arizona, 536 U.S. 584, 153 L.Ed. 2d 556, 122 S.Ct. 2428 (2002); and United States v. Booker, 543 U.S. 220, 125 S.CT. 738, 160 L.Ed. 2d 621 (2005).

In Jones, the Supreme Court stated that in spite of the fact that the statute "at first glance has a look to it suggesting [the issue of ultimate fact] are only sentencing provisions," 526 U.S. at 232, 143 L.Ed. 311, 119 S.Ct. 1215, the Court concluded the fact issue (elevating punishment lower or higher) was an element to the offense.

In Cunningham v. California, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed. 2d 856 (2007), the Court considered that the lower court had found the aggravating factors by a preponderance of the evidence and found that facts determined by the trial court based on a preponderance of the evidence rather than by the jury beyond a reasonable doubt, violated the Sixth Amendment right of the defe4ndant.

Before Cunningham, in Ring v. Arizona, 536 U.S. 584, 153 L.Ed. 2d 556, 122 S.Ct. 2428 (2002), the Court held it was impermissible for "the trial judge, sitting alone" to determine the presence or absence of the aggravating factors required by Arizona law for imposition of the death penalty. Id. at 588-89. The Court went on to state "if a state makes an increase in a defendant's authorized punishment contingent on the finding of a fact, that fact--- no matter how the state labels it---must be found by a jury beyond a reasonable doubt." Id. at 602, 153 L.Ed. 2d 556, 122 S.Ct. 2428. The opinion made it clear that ultimately, while the procedural error in Ring's case might have been harmless because the necessary finding was implicit in the jury's guilty verdict, Id. at 609, "the characterization of a fact or circumstance as an 'element' or a 'sentencing factor', is not determinative of the question 'who decides', judge or jury." Id. at 605, 153 L.Ed. 2d 556, 122 S.Ct. 2428.

And finally, this same principle was readdressed in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), where the Court held that under the Sixth Amendment any fact other than a prior conviction that was necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury's

2

verdict, had to be admitted by a defendant or proved to a jury beyond a reasonable doubt.

In Apprendi, the Supreme Court recognized that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties." 530 U.S. at 490, 120 S.CT. 2348, 147 L.Ed. 2d 435. But by definition, a range of punishment includes not only a maximum but a minimum; therefore such facts would include any fact relevant to distinguishing a less serious crime from a more serious one.

### B. Proving Elements Beyond a Reasonable Doubt

Under the Due Process Clause of the Fifth Amendment, the prosecution is required to prove beyond a reasonable doubt every element of the crime with which a defendant is charged. In re Winship, 397 U.S. 358, 364 (1970); United States v. O'Brien, 130 S.Ct. 2169, 2174 (2010) (distinguishing between element of a crime that must be charged in an indictment and proved to a judge at sentencing by a preponderance of the evidence)(enhancment elements); see also Sullivan v. Louisiana, 508 U.S. 275, 278 (1995).

The standard protects three interests: (1) First it protects the defendant's liberty interest. (2) Second, it protects the defendant from the stigma of conviction. (3) Third, it encourages community confidence in criminal law by giving "concrete substance" to the presumption of innocence. Winship, 397 U.S.at 363-364.

A state may not distinguish between similar offenses that have different maximum penalties without requiring the prosecution to prove beyond a reasonable doubt the facts that distinguish the two offenses. See Apprendi v. New Jersey, 530 U.S. 466, 488-492 (2000). The facts in this case clearly demonstrate that the jury DID find beyond a reasonable doubt that the State DID NOT prove an offense was committed on or after Sept. 1, 2007; however, the jury did not clearly find the converse of that: the jury DID NOT find beyond a reasonable doubt that an offense was committed PRIOR to Sept. 1, 2007, thus the instruction error is clear and obvious. See Special Issue verdict RR V10 p107) This should have been an acquittal. See U.S. v. Bonner, 648 F.3d 209, 214 (4th Cir.2011)(prosecutions failure to prove beyond a reasonable doubt that defendant was linked to the robbery when identity was in dispute required acquittal). Usserv's identity was not only challenged as mistaken identity, but more so, opportunity was being challenged based on the date.

The giving of a constitutionally deficient reasonable doubt instruction is among those constitutional errors that require reversal of a conviction, rathwer than those that are amenable to harmless-error analysis. See Chapman v California, 386 U.S. 18, 24, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 ALR3d 1065; see also Sullivan v. Louisiana, 508 U.S. 275 (1993); Cage v. Louisiana, 498 U.S. 39, 112 L.Ed. 2d 339, 111 S.Ct. 328.

The finding of facts made by the judge, or implicit in the instruction to the jury effectively denied the defendant an opportunity to present a defense for any date PRIOR to Sept. 1, 2007; See Ground 19, Denial of Right to Notice to Present Defense. Because the charged offense was enacted on Sept. 1, 2007, (See Acts 2007 80th Leg. ch.593), and because the state insisted it ws prosecuting the charged offense as a "Different offense" (SEe RR V2p.44), the petitioner had no reason to present a defense for prior to Sept. 1, 2007, as notice did not account for it.

Furthermore, because NOfacts remain in the record to support an offense for PRIOR to Sept. 1, 2007, then NO reasonable jurist could have found the defendant guilty beyond a reasonable doubt. Thus, but for the Judge's usurpation of the jury's rolle, the defendant would not have been found guiilty. See Facts listed in Ground 5, State habeas application.

This case, however, iş not one that simply relies on this date argument; The date argument is simply what is allowed to be argued by law. Petitioner hjas been adamant from the beginning that the child in this case had first acc used anopther man, Jorge Fernandez WHEN SHE WAS THE AGE SHE SAYS SHE WAS and then ten years later, the petitioner was on trial for the accusation she claim ed had happened to her once in her entire life. This cannot fairly be presente ed in these arguments however, because no facts have been established for the record foOr the court to consider. So you Naysayers who says that this is just a DATE argument, THIS IS AN ARGUMENT THAT I DID NOT COMMIT THIS CRIME BECAUSE I DIDN'T.

### Overcoming AEDPA

Ussery must meet his full burden under AEDPA and demonstrate that TCCA's decision was contrary to or an unreasonable appll'cation of clearly established federal law. Harrington v. Richter, 562 U.S. 86, 100-101 (2012). That is, he must demonstrate that all fairminded jurist would find the TCCA's determinatie ion unreasonable.

As Ussery has established, but for violation of his 5th & 6th Amendment rights to Due Process and Trial by jury, NO reasonable fact-finder would have found him guilty, thus ALL fairminded jusists wqould find the TCCA's determination unr'asonable. Further, as no evidence supports an offense for prior to Sept. 1, 2007, no reasonable jurist would find the TCCAS decision reasonable.

In addition to the above, petitioner has established that but for a Double Jeopardy violation, as the TCCA's decision was contrary to or an unreasonable application of clearly established Double Jeopardy law. See Ground 2 & 30

Furthermore, implicit in the jury's verdict on the Special Issue was that the jury DID NOT find the complainant in this case credible. Additionally

Respondent's Answer pg. 17 asserts that by deny9ing these claims based oin
on the findings and on independent review of the record the TCCA made expl-
icit and implicit determinations in favor of the state and defense counsel.
Both explicit and implicit credibility choices made by a state court are
afforded a presumption of correctness under 28 USC 2254(d). Self v. Collins,
973 F.2d 1198, 1214 (5th Cir.1992)(citing Lavernia v. Lynaugh, 845 F.2d 493,
500 (5th Cir.1988).

　　Ussery relied on the same contention for asserting that implicit in the
trial counsels affidavit with attachments, is a finding of correctness of the
representation made by the state that the State refused to change trhe
charged offense to a lower offenses (such as the lesser defendant was ultim-
ately sentenced for) based on a theory the state would PROVE defendnat MET
the mother of alleged victim in 2008. (SEE State habeas Appendix A-6; see
statehabeas proceedings Affidavit of counsel, attachments). This would be xs
support the defendant would not need to present a defense for PRIOR to Sept.
1, 2007. Truly, counsels submission of these documents for review with his
affidavit should meet any requirement of previously undiscoverable information
being available.

　　As Respondent asserts, an evidentiary hearing is precluded unless: (1)
a petitioner's claim rely on a new rule of constitutional law or a factual
predicate previously unddiscoverable through the exercise of due diligence,
(petitioner attempted to hodla hearing on these documents in state proceed-
ings, however, counsel was forced on defendant and his requests ignored, see
Ground 31-34); and (2) the petitioner establishes by clear and convinoing
evidence that, but for constitutional error, no reasonable factfinderr would
have found him guilty. 28 USC 2254(e)(2).

　　The petitioner can establishsx that he is actually innocent in that, but
for the constitutional errors listed herein, no reasonable factfinder would
have found him guilty. An applicant may prove actual innocence (and therefore
cause to excuse default ot review of any claim) by providing facts sufficient
to establish "that, by a preponderance of the evidence, but for [the Double
Jeopardy violation, the 5th or 6th Amendment violation, the no evidence] no
rational juror could have found the applicant guilty beyond a reasonable
doubt."Ex parte Knipp, 236 S.W. 3d 214, 217 (2007); Ex parte Milner, 394 S.W.
3d 502, 505-06 (2013).

## PETITIONER'S CONVICTION IS A VIOLATION OF DOUBLE JEOPARDY
(Ground 2)

The Constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possibl conviction more than once for an alleged offense. In his Commentaries, which greatly influenced the generation that adopted the Constitution, Blackstone recorded:

"...the plea of auterfoits acquit, or a former acquittal, is grounded on this universal maxim of the common law of England, that no man is to be brought into jeopardy of his life more than once for the same offense." 4 N Blackstone's Commentaries 335.

"The common law not only prohibited a second punishment for the same off-ense, ~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~ but it went further and for-bid a second trial for the same offense, whether the accused had suffered pun-ishment or not, and whether in the former trial he had been acquitted or con-victed." Ex parte Lange, 18 Wall, 163 at 169 (1873). "The prohibition is not against being twice punished, but against being twice put in jeopardy, and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." United States v.Ball, 163 U.S. 662, 669 (1896)

It hasa long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and even when "not followed by any judgement, it is a bar to a subsequent prosecution for the same off-ense." Green v. United States, 355 U.S. 184 at 188 (1957).

### Facts Compared With Controlling Authority

In order to explore the root of the double jeopardy error at issue here, the petitioner will need to address the contention of the state that the Special Issue verdict was a sentencing consideration for an enhancement-only-- - a sentencing factor--- while the offense for the conviction remained the same. To understand the issue, the reviewing court need only determine the question---was the state in fact prosecuting a "different offense"? This que-stion should not be limited to a purely legal question, however, because the facts will show the State represented to the defense and the court it was in fact prosecuting a "different offense". (RR V2 p.44).

To explore the issue from a legal perspective, the petitioner relies on Witte v. United States, 515 U.S. 389 (1995), a case where the Supreme Court decided a double jeopardy issue on sentencing factors---however, the bearing was on the character of the offense", or that "the offender is punished [] only for the fact that the present offense was carried out in a manner that warrants increased punishment, not for a different offense, (which that related

conduct may or may not constitute).

In Witte, the Court held that the Double Jeopardy Clause did not bar a prosecution for conduct that had provided the basis for an enhancement of the defendant's sentence in a prior case. Accordingly, "[t]he Supreme Court has generally declined to apply the Double Jeopardy Clause to sentence enhancement because enhancements punish defendants only for the fact that the present offense was carried out in a manner that warrants increaseds punishment..." United States v. Watts, 519 U.S. 148, 155, 136 L.Ed. 2d 554, 117 S.Ct. 633 (1997)(quoting Witte, 515 U.S. at 401, 403). In Watts, relying on Witte, the Court held the Double Jeopardy Clause permitted a court to consider acquitted conduct in sentencing a defendant under the Guidelines. See also Ground 4.

Petitioner, though, argues that the relevant factors involved in the instant case, taken together for consideration of the sentencing charge become "a tail which wags the dog of the substantive offense." McMillan v.Pennsylvania, 477 U.S. 79 at 88 (1986).

If this court were to review the issue from the perspective considered in Witte, then the factor is only the AGEof the actual complainant or is whether Agg. Sex. Assault of a Child Under Six' applies or 'Agg/ Sex. Assault of a Child Under 14' applies, as this designation under the pertinent statute is what delineates the sentence from 5-99yrs or an Enhancement to 25-99 yrs. See Tex. P.C. 22.021(a)(2)(B) and Subsection (f)(1). However, the factor considered in the trial was a defensive issue based on date of enactment of the statute: "DO You the jury, unanimously agree that the State has proven beyond a reasonable doubt....that the defendant committed this offense on or after Sept. 1, 2007?" The jury's verdict was: "We Do Not."(RR V10 p.107). Of important note to this contention is the State's response to multiple objections of the charged offense due to the impossibility of the defendant to have committed the crime based on the allegations of the complainant or when and where the complainant lived at with the defendant, and the date the indicted offense was enacted; the State's response to the initial objection was to insist on the charged offense by relying on a theory the defendant MET the mother of the complainant in 2008---a date after the statute for the new offense was enacted. (See State habeas Appendix A-6; see also attachments to trial attorney Cornelius affidavit in state habeas proceedings). Then, in a pretrial hearing, when defense counsel once agains objecteds to the indicted offense language as "overwhelmingly prejudicial without any proof" and the State insisted on the offense language of 'child under six' "because it is a different offense." (RR V2 p.44). These representations made by the State and

the statutory construction thus required procedures for trial, at the outset
and pretrail, to follow the mandatory 25-99yr guidelines---while one statute
in particular (Tex.CCP 37.07)XX worked to restrict the Special Issue defense
from being raised in the guilt-innocence phase to just the Sentencing phase.
And had the State treated the offense as a "different offense" as insisted, XX
then no other offense or guideline should have been considered because these
specific facts give credence to the fact that the date issue was "a tail which
Wag[ged] the dog of the substantive offense." McMillan, 477 U.S. at 88.

Furthermore, it is quite clear from the jury's verdict in the Special
Issue that had the defensive issue been presented in the guilt phase, a diff-
erent outcome would have resulted; just as relevant, had the defendant known
a date prior to Sept. 1, 2007 was going to be applied, then not only would
he have presented a defense for prior to that daten, but also procedures foll-
owed at the outset and pretrial would have been different. In considering an
ex post facto issue under a similar set of facts, the Supreme Court decided a
stat ute is unconstitutional if it "retroactively withdraws a complete defense
to prosecution after it [the statute] has already attached, and it does so
in a manner that allows the state to withdraw this defense at will and with
respect to individuals already identified." Stogner v. California, 539 U.S.
607 at 622 (2003). Therefore, if this court fails to accept them blatant
Double Jeopardy violation in the instant case, it would be doing so by virtue
of supporting a violation of another Substantial right of the defendant. See
Grounds 17-18.

Based on the facts of this case, upon return of the verdict by the jury
on the Special Issue, that the State failed in its proof of the charged offens
ensely any requirement by the court for the jury to consider a different off-
ense and punishment range for prior to Sept. 1, 2007 was a violation of Double
Jeopardy in that it was a Second consideration for the same offense after acq-
uittal. Certainly, the obvious inducement of the defendant by the State is
glaringly apparent as well.

### Closing Authority Considerations

"[O]ur cases have defined an acquittal to encompass any ruling that the
prosecution's proof is insufficient to establish criminal liability for an
offense." Evans v. Michigan, 568 U.S. 313, 318, 133 S.Ct. 1069, 185 L.Ed. 2d
124. In particular we look to whether the rulings Substance relate[s] to the
ultimate question of guilt or innocence." United States v. Scott, 437 U.S. 82,
93 n.11, 98 S.Ct. 2187, 57 L.Ed. 2d 65 (1978).

Jeopardyh&labsen'and retrialufollwwiegwa chust-decongedzedqthaxxxxxxDsebixxxxx



It has been half a century since we first recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is "based upon an egregiously erroneous foundation." Fong Foo v United States, 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed. 2d 629 (1962). Even if considered as such, "A mistaken acquittal is an acquittal nonetheless, and we have long held that "[a] verdict of acquittal...could not be reviewed, no error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." United States v. Ball, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 2d 300 (1896). And an acquittal precludes retrial even if it is premised upon an erroneous decision to exclude evidence. Sanabria v. United States, 437 U.S. 54, 68-69, 78, 98 S.Ct. 2170, 57 L.Ed. 2d 43 (1978); a mistaken understanding of what evidence would suffice to sustain a conviction, Smith, 543 U.S. at 473, 125 S.CT. 1129, 160 L.Ed. 2d 914; or a "misconstruction of the statute" defining the requirements to convict, Rumsey, 467 U.S. at 203, 211, 104 S.Ct. 2305, 81 L.Ed. 2d 164. Cf. Smalls v. Pennsylvania, 476 U.S. 140, 144, 145, n.7, 106 S.Ct. 1745, 90 L.Ed. 2d 116 (1986)''. In all these circumstances, "the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character." United States v. Scott, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed. 2d 65 (1978).

Indeed it was the authorities above-listed in-which the Supreme Court in Evans v. Michigan, 568 U.S. 313 at 315 (2013) relied on when answering the question whether retrial is barred by double jeopardy when a trial court grants a an acquittal because the prosecution had failed to prove an "element" of the offense that, in actuality, it did not have to prove. The Court instructed "There is no question the trial court's ruling was wrong; it was predicated upon a clear misunderstanding of what facts the State needed to prove under State law. But that is of no moment. Martin Linen Supply Co., Sanabria, Rumsey, Smalls, and Smith all instruct that an acquittal due to insufficient evidence precludes retrial, whether the court's evaluation of the evidence was "correct or not." Martin Linen, 430- U.S. at 571, 97 S.Ct. 1349, 51 L.Ed. 2d 642, and regardless of whether the courts decision flowed from an incorrect antecedent ruling of law.

The Court reasoned "The error in Rumsey could just as easily have been characterized as the erroneous addition of an element of the statutory aggravating circumstance...Conversely, the error here could be viewed as a misinterpretation of the Statute's phrase... This is far too fine a distinction to be meaningful, and we reject the notion that a defendant's constitutional

rights would turn on the happenstance of how an appellate court chooses to describe a trial court's error." Evans v. Michigan, 568 U.S. 313 at 322-323.

Perhaps most applicable to the case at hand is the decision in Burks v. United States, 437 U.S. 1 (1978). This is because the defendant in the instant case raised the Special Issue, intended from the outset as a defense to prosecution. See App'l A-1, A-6; State habeas attachments to affidavit.

In Burks, the Court held that when a defendant xxxi raises insanitya as a defense, and a court decides the "Government ha[s] failed to come forward with sufficient proof of [the defendant's] capacity to be responsible for criminal acts," the defendant has been acquitted because the Court decided that "criminal culpability ha[s] not been established." 437 U.S. at 10, 98 S.Ct. 2141, 57 L.Ed. 2d 1. Lack of insanity was not an "element" of Burk's offense, bank robbery by use of a dangerous weapon. See 18 USC 2113(d) (1976ed.). Rather, insanity was an affirmative defense to criminal liability. Our conclusion thus depended upon equating a judicial acquittal with an order finding insufficient evidence of culpability, not insufficient evidence of any particular element of the offense." Evans, 568 U.S. at 324.

The State's commitment to the offense language of "child under six" as a "different offense", (RR V2 p.44), an offense enacted Sept. 1, 2007 (See Acts 2007, 80th Leg. ch.593), the only language contemplated by the State for establishing culpability; therefore, where defendant's defense was not necessarily statutorily prescribed---it was still outcome determinative xxxxxxx because culpability was removed. The successful defense represented an acquittal. "If the District Court held in the first instance, as the reviewing court should have done, a judgement of acquittal would have been entered, and of course, ptitioner cannot be retried for the same offense. Burks, 437 U.S. at 11 (referencing Fong Foo v. United States, 369 U.S. 141 (1962).

The Double Jeopardy Clause simply does not allow "the state...to make repeated attempts to convict an individual for an alleged offense," since "[the] Constitutional prohibition against 'double jeopardy' was designed to protect an individual from being subjected to the hazards of trial and possibly conviciton more than once for an alleged offense." Green v. United States, 355 U.S. 184, 187 (1957); see Serfass v. United States, 420 U.S. 377, 387-388 (1975)" United States v. Jorn, 400 U.S. 470, xxx 479 (1971)"./

Closing Considerations

The controlling constitutional principle of the [Double Jeoaprdy] Clause, "focuses on prohibitions against multiple trials." United States v. Martin Linene Supply Co., 430 U.S. 564, 569, 97 S.Ct. 1349, 51 L.Ed. 2d 642 (1977). "[I]t shas long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy, and...is a bar to a subsequent prosecution for the same offense." Green v. uinited States, 355 U.S 184, 188, 78 S.Ct. 221, 2 L.Ed. 2d 199, 77 Ohio Law Abs. 202 (1957).

Once renderede....a jury's verdict of acquittal is inviolate. We have described this principle----"that [a] verdict of acquittal....could not be reviewed, no error or otherwise"---as "[p]erhaps the most fundamental rule in the history of double joepardy jurisprudence." Martin Linena, 430 U.S. at 571 97 S.Ct. 1349, 51 L.Ed. 2d 642. This bright-line rule exists to preserve the jury's "overriding responsibility....to stand between the accused and a potent iallt arbitrary or abusive Government that is in command of the criminal sanction." Id. at 572, 97 S.Ct. 1349, 51 L.Ed. 2d 642.

We have long recognized that, while an acquittal might reflect a jury's determination that the defendant is innocent of the crime charged, such a verdict might also be "the result of compromise, compassion, lenity, or misunderstanding of the concerning law."Bravo-Feraandez v. unitedStates, 580 UΒ.S 5, 10, 137 S.Ct. 352, 196 L.Ed. 2d 242 (2016); see also United States v. Powell, 469 U.S. 57, 65, 105 S.Ct. 471, 83 L.Ed. 2d 461 (1984)Β. Whatever the basis, the Double Jeoaprdy CLause prohibits second-guessing the reason for a jury's wexdict acquittal. As a result, "the jury holds an unreviewable power s to return a verdict of not guilty even for impermissible reasons." Smith v. United States, 599 U.S. 236, 253, 143 S.Ct. 1594, 216 L.Ed. 2d 238 (2023).

It is not dispositive whether a fact-finder "acted on its view that the prosecution had failed to prove its case." Id. at 325, 133 S.Ct. 1069, 185 L.E d. 2d 124. Because of this focus on substance over labels, a State's "characte erization, as a matter of double jeopardy law, of [a ruling] is not binding on us." Smalls v. Pennsylvania, 476 U.S. 140, 144 n.5, 106 S.Ct. 1745, 90 L.Ed. 2d 116 (1988); see also Smith v. Massachusetts, 543 U.S. 462, 468-469, 125 S.Ct. 1129, 160 L.Ed. 2d 914 (2005).

To be sure, "the States possess primary authority for defining and enforc ing the criminal law," Engle v. Isaac, 436 U.S. 107, 128, 102 S.Ct. 1558, 71 L.Ed. 2d 782783 (1982)----a power that permits States "to regulate procedures under which [thier] laws are carried out," Patterson v.New York, 432 U.S. 197, 201, 97 S.Ct. ΒΒ 2319, 53 L.Ed. 2dΒ 281 (1977). But the b ultiamte question is whether the Double Jeoaprdy Clause recognizes an event as an acquittal. In making that determination, we a

//

ask whether---given the question of state law---there has been "any ruling that the prosecutions proof is insufficient to establish criminal liability for an offense." Evans, 568 U.S. at 318, 133 S.Ct. 1069, 185 L.Ed. 2d 124. Here, the jury's verdict on the Special ISsuu was an acquittal.

An acquittal is an acquittal, even "when a jury returns inconsistent verdicts, convicitng on one count and acquitting on another count where both counts turn on the very same issue of ultimate fact." Bravo-Fernandez, 580 U.S. at 8, 137 S.ct. 352, 196 L.Ed. 2d 242. As far as the Fifth Amendment is concerned, "[i]nconssitency in a verdict is not a sufficient reason for setting it aside." Harris v. Powers, 454 U.S. 339, 345, 102 S.Ct. 460, 70 L.Ed. 2d 530 (1981).

Once there has been an acquittal, our cases prohibit any speculation about the reasons for a jury's verdict---even when there are specific jury findings that provides a factuakl basis for such speculation---because it is impossible for a court to be certain about the ground for the verdict without improperly delving into the jury's deliberations." Smith, 599 U.S. at 252-253 143 S.Ct. 1594, 216 L.Ed. 2d 238. The COurt simply cannot know why the jury in Ussery's case acted as it did, and the Double Jeoaprdy Clause forbids us to guess. To conclude otherwise would impermissibly authorize judges to usurp the jury right." Id. at 252, 143 S.Ct. 1594, 216 L.Ed. 2d 238.

## FINAL CONSIDERATION ADDENDUM

In a final consideration of Ground Two's Double Jeopardy Claim: The correct Rull was stated in Kepner v. United States, 195 U.S. 100 at 130N: it is, then, the settled law of this court that former je aprdy includes one who has been acquitte3d by a verdict duly rendered..."

Once the governemnt had failed to present llufficient evidence on the latter theory of criminal liability, [Appellant] maintains that under Sanabria v. United States, 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed. 2d 43 (1978), the Double Jeopardy Clause barred gioving the governemnll another chance to prove Defendant's guilt ON ANOTHER THEORY.

The jury's verdict on t le Special Issue wall itself an "acquitt[al] by a verdict duly rendered," Kepner, 195 U.S. at 130, and the trial court;'s llnstrucllion t i sentence to an uncharged offense and punishment range applicable to the P.C. 22.021 lltatute carried with it an implicit finding of insufficient evidence of the charged offense; Simultaneous;ly, it allowed a verdict to be rendered on a second consideration of an offense based ON ANOTHER THEORY than what the State prellented under the charged offense. (See State Habeas Appendix A-6 "the State llntandll to prove you met (the mother of complainant) in 2008"---this was in response to lltate insisting on charged offense and

refusing to charge or prosecute the very offense considered and applied or
for which petitioner claims "is jeopardy barred; see also RR V2 p.44---prose-
cuting charged offense as a "different offense" when state was opposed to
reverting to offense that exi"ted under statute PRIOR to Sept. 1, 2007).

Thus, where it could be considered (wrongful;l;y) that the appellate
courts designation of petitioner's offense of conviction was that o" a lesser
o"ffense, this cannot be the case here where the offense was the same because
in one regard, it turned on hte same issue of ultimate fact. See Special Issue
RR V10-p.107.

The key XXXXX ruling (implicit "n the jury's Special Issue verdict) was
the determination that the Defendant at trial had established "is actual inno-
cence in regard" to the off"""cial proceeding provision---- Tex. P.C. 22.021
(f)(1), the only charged language and provision sought for conviction, prose-
cute" and charged, or submittted to the jury. Id.

DISTINCTION BETWEEN EVIDENTIARY INSUFFICIENCY
AND TRIAL COURT ERROR: REMEDY REQUESTED

To be "ure, petitioner has promoted this claim on the premise that the
Spec"al Issue verdict reached operated on an acquittal of the charged offense
based on legal and factual insufficiency---coupled with a 'No Evidence' claim
to support any offense a" convicted for prior to Sept. 1, 2007. See GFounds
5 & q11. The trial and appellate court's"X IMPLICIT holding that the verdict
reached rendered an acquittal of the charged offense wa" itself a finding that
the Government failed to prove its case. See American Tabacco Co. v. United
States, 328 U.S. 781, 787 n.4 (1946)(In holding the evidence insufficient to
"ustain guilt [of the charged offense], an appellate court determines that the
pro"ecution has failed to prove guilt beyond a reasonable doubt).

In contrast, a "r"lversal for trial error, as distinguished from evident-
iary "ufficiency, does not constitute a decision to the effect that the gov-
ernment has failed to xxx prove its case. As such, it implies nothing with
respect to the guilt or innocence of the defendant." Burks,v. United
States, 437 U.S. 1 at 15 (1978).

Although petitioner has alleged multiple trial court errors, or most,
(See Ground 1, 12, 19, 25, etc.), none of the3"le grounds are to "upplant the
"mplicit finding of acquittal of both the trial and appellate courts. See also
Respoprdents Answer. And though many claims do request remedy for new trial in
the alternative for an acquittal, "It cannot "e meaningfully "aid that a xxxxx
person "waives" his right to a judgement of acquittal by moving for a new "
trial. See Green v. United States, 355 U.S. at 191-198.Moreover, as Forman,

13

361 U.S. at 425 has indicated, an appellate court is authorized by Ss 2106 to 'go beyond the particular relief sought' in order to provide that relelf which would be "just under the circumstances." Since we bdl today that the Double Jeopardy Clause precludes a second trial once the reviewinll court found the evidence legally insufficient, the only "just" remedy availaole for that court is the direction of a judgement of acquittal. Burks, 437 U.S. at 17-18.

PETITIONER'S CONVICTION AND SENTENCE ARE ILLEGAL AS THE
COURT WAS WITHOUT JURISDICTION TO SENTENCE OR CONVICT THE PETITIONER
(Ground 3)

Before exploring more conventional considerations for what petitioner
has fpresented as an illegal sentence claim, petitioner first wants to address
the applicable statute and its jurisdiction-stripping effect; Accordingly,
qthe statute must be interpreted from a jurisdictional perspective.

LEGAL ARGUMENTS

Courts review de novo such questions of statutory interpretation. United
States v. Parretti, 530 F.3d 422, 429 (6th Cir.2008), employeeing a three-
ltep legislative-interpretation framework established by the Supreme Court:
"first, a natural reading of the full text; Second, the common-law meaning
of the statutory terms; and finally consideration of the statutory and leg-
islative history for guidance." Lockhart v. Napolitano, 573 F.3d 251, 255
(6th Cir.2005)(citing United States v. Wells, 519 U.S. 482, 490-92, 117 S.Ct.
921, 137 L.Ed. 2d 107 (1997)). The "natural reading of the full text" requires
that we examine the statute for its plain meaning, including "the language
and design of the statute as a whole." Id. (quoting Parrett, 530 F.3d at 429).
"If the statutory language is not clear, we may examine the relevant legis-
ative history." Parrett, 530 F.3d at 429.

However, the statute in question is quite clear: it establishes a MAND-
ATORY application if the definitions of Subsections (f)(1) or (f)(2) are
fulfilled in how the State characterizes the language of the offense alleged.

In the first half of this 88 illegal sentence consideration, the quest-
ion is: Did the enactment of subsection (f) of Tex. P.C. 22.021 (upon its
application to an offense intended for prosecution), strip the court of jur-
isdiction of consideration of any other offense under the statute due to the
mandatory nature of the statute and those statutes that drive it?

Sufficiency of Indictment

The second half consideration of the illegal sentence and conviction
claim (for lack of jurisdiction), can be addressed by considering: (1) the
sufficiency of the indictment; and (2) whether the defendant was provided
proper notice to defend against the convicted offense. The first issue will
le addressed in this argument, while the second issue listed on 'notice' will
reference arguments propounded by petitioner in Ground 19----and will assume
the contentions there as true. Accordingly, Petitioner adopts and incorpor-
ates by reference the facts and arguments listed in Ground 19.

19A

In Ground 19, and here, petitioner asserts that the defect in the indict-
ment (incorrect language) deprived the defendant of notice of the charges
against him for any offense which existed under statute for prior to Sept. 1,
2007 and deprived the court of jurisdiction for any offense under code PRIOR
to Sept. 1, 2007. See Tex CCP 22.021; See Indictment; see also RR V2 p.44
(where State asserted it was prosecuting the 'child under six' offense as its
own "different offense"). The 'child under six' language was enacted Sept. 1,
2007. See Acts 2007, 80th Leg. ch. 593. The only offense which was applied at
the outset was 'Agg. Sexual Assault of a Child Under Six" and was the only
offense submitted to the jury during the guilt phase: However, upon return
of the verdict on the Special Issue, the jury was instructed to consider an
offense was instructed to consider an offense which existed under statute for
PRIOR to Sept. 1, 2007. Petitioner argues the Court was without jurisdiction
to consider an offense which existed under statute PRIOR to the enactment of
the charged offense, deprived defendant of notice of the charges, and was
therefore illegal due to the insufficiency of the indictment, and its failure
to confer jurisdiction on the court. Notably, this set of facts denied defen-
dant an ability to present a defense for any date prior to Sept. 1, 2007.

The standard for determining the sufficiency of an indictment is based
upon practical, not technical considerations. United States v. Chaney, 964
F.2d 437, 446 (5th Cir.1992). The test involves minimal constitutional stand-
ards, not whether a better indictment could have been written. Id. The essen-
tial elements of the offense, including knowledge or intent, must be included
in the indictment but need not be expressed in any specific terms. United
States v. Arteaga-Limones, 529 F.2d 11893 (5th Cir.), cert. denied, 429 U.S.
920, 97 S.Ct. 315, 50 L.Ed. 2d 286 (1976). The "plain and sensible meaning
of the language used "may give the defendant notice sufficient to meet the
requirements of the Sixth Amendment. United States v. Haas, 583 F.2d 216 (5th
Cir.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1788, 60 L.Ed. 2d 240 (1979).
An indictment should be found sufficient unless no reasonable construction of
the indictment would charge the offense for which the defendant has been
convicted. United States v. Salinas, 956 F.2d 80 (5th Cir.1992)(construing
federal indictment).

The fact that an indictment is insufficient under state penal code stat-
utes does not necessarily affect the federal constitutional determination as
to whether the indictment gives a defendant notice of the charge against him.
United States v. Webb, 747 F.2d 278 (5th Cir.1984), cert. denied, 469 U.S.
1226, 105 S.Ct. 1222, 84 L.Ed. 2d 362 (1985).

*19B*

TRIAL COURT ALLOWED TO PRONOUNCE SENTENCE FOR OFFENSE NOT
SUBMITTED TO THE JURY AND FOUND THE FACTS NECESAARY TO CONVICT
(Ground 4)

The jury's verdict on the special issue was that the state DID NOT prove
beyond a reasonable doubt that the defendant committed the alleged offense
on or after Sept. 1, 2007. (RR V10 p.107). Thye jury was simultaneously
instructed to sentence petitioner to a pre-Sept. 1, 2007 offense and pun-
ishment range without giving the jury the option to acquit.

ACQUITTED CONDUCT-SENTENCING AND THE
PREPONDERANCE OF THE EVIDENCE STANDARD

The Supreme Court in United States v. Watts, 519 U.S. 148, 117 S.Ct. 633,
136 L.Ed. 2d 554 (1997) decided to hold that "a jury verdict of acquittal
does not prevent the sentencing court from considering conduct underlyingthe
acquitted charge, so long as the conduct has been proved by a preponderance
of the evidence." Id at 157. That decision was reached by reasonaing that "an
acquittal in a criminal cases does npt preclude the Government from relitig-
ating an issue when it is presented in a subsequent action governed by a lower
standard of proof." (Watts, 519 U.S. at 156 (citing Dowling v. United
States, 493 U.S. 342, 349, 107 L.Ed. 2d 708, 110 S.Ct. 668 (1990)). The Court
has held that application of the preponderance standard at sentencing genera-
lly satisfies due process. See McMillan v.Pennsylvania, 477 U.S. 79, 91-92
L.Ed. 2d 67, 106 S.Ct. 2411 (1986).

However, juries are democratic institutions clled upon to represent the
community as "a bulwark between the State and the accused", and thier verddicts
are the tools by which they do so. McClinton v. United States, 143 S.Ct. 2400,
2401 (2023)(quoting Southern Union Co. v. United States, 567 U.S. 343, 350,
132 S.Ct. 2344, 183 L.Ed. 2d 318 (2012); see also Blakely v. Washington, 542
U.S. 296, 305-306, 124 S.Ct. 2531, 159 L.ED. 2d 403 (2004)("Just as suffrager
ensures the people ultimate control in the Legislative and ?Eecutive Branches,
jury trials are meant to ensure their control in the Bjudiciary");With an
acquittal, the jury as reprellentative of the community has been asked by the
State to authorize punishment for an alleged crime and has refuesd to do so."
McClinton, 143 S.Ct. 2402.

It is not dispositive whether a factfinder "incanted the word 'acquit'";
instead, an acquittal has occurred if the factfinder "acted on its view that
the prosecution had failed to prove its case." Evans v. Michigan, 568 U.S.
313 at 325. Acquittals have long been "accorded special weight", UnitedStates
v. DiFrancesco, 449 U.S. 117, 129, 101 S.Ct. 426, 66 :L.Ed. 2d 328 (1980),
distinguishing them from conduct that was never charged and passed upon by a
jury.

/5

In the case at hand, the defendant had a clear defense for which he prevailed on but for which improperly shifted the burden of proof to the defense. See Special Issue RR V10 p.107). The state argued on appeal that the Special Issue ultimately boiled down to a sentencing factor; Petitioner poses however, that consideration of these facts, because the facts (date and language) were based on the same ultiamte issues of fact for the charged offense and the uncharged offense, then the factor was indeed an element to the offense and not just a sentencing factor. See Jones v. United States, 526 U.S. 227, 230, 143 L Ed. 2d 311, 119 S.Ct. 1215 (1999), the Supreme Could considered the federal carjacking statute which provides three different maximum sentences depending on the extent of the harm to the victim: 15 years in jail if there was no serious injury to a victim, 25 years if there was "seriouos bodily injury", and life in prison if death resulted. 18 USC Ss 2119 (1988 ed. Supp. V). In spite of the fact that the statute "at first glance has a look to it suggesting [that the provisions relating to the extent of harm to the victim)are only sentencinng provisions," 526 U.S. at 232, 143 L.Ed. 311, 119 S.Ct. 1215, the Supreme Court concluded that the harm to the victim was an element of the crime.

Given that the jury's verdict in the instant case on the Special Issue discounted the date factor, the resulting offense the jury was instructed to sentence to was based on aggravating factors fould by the judge rather than by the jury. This set of facts is inconsistent with the Supreme Courts ruling in Ring v. Arizona, 536 U.S. 584, 153 L.Ed. 2d 556, 122 S.Ct. 2428 (2002). There, the Court held it was impermissible for "the trial judge, sitting alone to determine the presence or the absence of the aggravationg factors required by Arizona law for imposition of the death penalty. Id. at 588-589, 153 L.Ed. 2d 556, 122 S.Ct. 2428."If a state makes an increase in a defendant's authoriz ed punishment contingent onn the finding of a fact, that fact--no matter how the State labels it---must be found by a jury beyond a reasonable doubt."Id. at 602, 153 L.Ed. 2d 556, 122 S.Ct. 2428. The opinion made it clear that ultimately, while the procedural error in Ring's case might have been harmless because the necessary finding was implicit in the jury's guilty verdict, id. a at 609, n.7, "the characterization of a fact or circumstance as an'element' or a 'sentencing factor' is not determinitive of the question 'who decides', Judge or jury,"id. at 605.

This same principle was readdressed in United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), where the Court still held that under the Sixth Amendment any fact other than a prior conviction tha that was necessary to support a sentence exceeding the maximum authorized by

the facts established by a plea of guilty or a jury verdict had to be admitted by a defendant or proved to a jury beyond a reasonable doubt, and the Court then applied Blakely to the U.S. Sentencing Guidelines.

In Booker, the trial judge increased Booker's sentence by 10 years higher---because the judge found true by a preponderance of the evidnece a fact that was never admitted to the jury. The Court concluded that a particular fact must be proved in order to sentence a defendant within a particular range, "[t]he Framers would not have thought it too much to demand that, before the model't inconvenience of submitting its accusation to 'the unanimous suffrage of twelve of his equals and neighbors,' rather than a lone employee of the State." 543 U.S. at 238 (citing Blakely, 542 U.S. at 313-14.

Therefore, if it is equally clear that the "Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged", United States v. Gaudin, 515 U.S. 506, 511, 132 L.Ed. 2d 444, 115 S.Ct. 2310 (1995), does such right somehow not extend to elements to an uncharged offense or elements undermined by an acquittal of a greater, unproven offense? The state should not be able to rely on an argument that the jury's verdict establishes any clearly established guilkt beyond a reasonable doubt for any date prior to Sept. 1, 200-7 simply because the jury was not allowed to consider an acquittal as an option.

In Establishing That Ussery's Ground 4 Claim Denial Was Unreasonable

The Supreme Court has acknowledged a divergence of opinion among the Circuits as to whether, in ecteeme circumstances, relevant conduct that wooldid dramatically increase the sentence must be based on clear and convinging evidence.SeeMcMillan, 477 U.S. at 88 (upholding use of preponderance standard wher there was no allegation that the sentencing enhancement was a tail which wags the dog of the substantive offense");Kinder v.United States, 504, U.S. 946, 948-949, 119 L.Ed. 214, 112 S.Ct. 2290 (1992)(White, J. dissenting from denial of certiorari)(acknowledging split); see also United States v.Townley, 929 F.2d 365, 369 (CA8 1991)("At the very least, McMillan allows for the possibility that the preponderance standard the court approved for garden variety sentencing determinations may fail to comport with due process, where, as here a sentencing factor becomes 'a tail which wags the dog of the substantive offense');United States v. Restrepo, 946 F.2d 654, 656, n.1 (CA9 1991)(en banc) (suggesting that clear and convincing evidence might be required for extraordinary upward adjustments or departures), certtdenied, 503 U.S. 961, 118 L. , cer

17

L.Ed. 211, 112 S.Ct. 1564 (1992); But see United States v. Washington, 11 F.3d 1510, 1516 (CA10 1993)("at least as concerns making a guideline calculations the issue of a higher than a preponderance of the evidence standard is foreclosed in this Circuit"), cert. denied, 511 U.S. 1020, 114 S.Ct. 1404, 128 L.Ed. 2d 76 (1994). Thus, there is precedent to state that Ussery's claim has merit. Ussery aslso cites the miscarriage of justice exception and seeks=to go through the actualk innocence gateway of Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed. 2d 808 (1995). The Court should further consider the faulty reasonable doubt instrucitons.

### Faulty Reasonable Doubt Instructions

Each ground shall consider that the resulting verdict of the Special Issue was an acquittal as the court violated the defendant's Fifth and Sixth Amendment right to jury trial. See Sullivan v.Louisiana, 508 U.S. 275.

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and publkic trial, by an impartial jury..." In Duncan v. Louisiana, 391 U.S. 145, 149, 20 L.Ed. 2d 491, 88 S.Ct. 1444 (1968), the Supreme Court found this right to trial by jury in serious criminal cases to be "fundamental to the American scheme of justice," and therefore applicable in state proceedings. The right includes, of course, as its most important element, the right to have the jury, rather than the judge reach the requisite finding of "guilty," see Sparf v. united States, 156 U.S. 51, 105-106, 39 L.Ed. 343, 15 S.Ct. 273 (1895). Thuss, although a judge may direct a verdict for the defendant if the evidence is legally insufficient to establish guilt, he may not direct a verdict for the state, no matter how axoverwhelming the evidence. Ibid. See also Martin Linen Supply Co., 430 U.S. 564, 572-573, 51 L.Ed. 2d 642, 97 S.Ct. 1349 (1977); Carpenters v. United States, 330 U.S. 395, 410, 91 L.Ed. 973, 67 S.Ct. 775 (1947).

The jury's verdict on the Specila Issue was that the State DID NOT prove an offense was committed on or after Sept. 1, 2007. (RR V10 p.107). However, implicit in the jury's charge was that a finding sfin the negative (the verdict actually reached) would become a sort of directed verdict for the state for a lesser offense, thus the state judge's instructions violated the defendant's Sixth Amendment right to jury trial.

What the factfinder must determine to return a verdict of guilty is prescribed by the Due Process Clause. The prosecution bears the burden of proving all elements of the offense charged, see, e.g., Patterson v. New York, 432 U.S. 197, 210, 53 L.Ed. 1302, 72 S.Ct. 1002 (1952), and msut persuade

the factfinder "beyond a reasonable doubt" of the facts necessary to establish each of those elements, see, e.g., In re Winship, 397 U.S. 358, 364, 25 L.Ed. 2d 368, 90 S.Ct. 354 (1972)(per curiam). This beyond-a-reasonable-doubt requirement, which was adhered to by virtually all common-law jurisdicitons, applies in state as well as federal proceedings. Winship, supra.

It is self-evidence, we think, that the Fifth Amendment requirement of proof beyond a reasonable doubt and the Sixth Amendment requirement of a jury verdict are interrelated. It would not satisfy the Sixth Amendment to have a jury determine that the defendant is PROBABLY guilty, and then leave it up to the judge to determine (as Winship requires) whether he is guilty beyond a reasonable doubt. In other words, the jury verdict required by the Sixth Amendment is a jury verdict of guilty beyond a reasonable doubt. Sullivan v. Louisiana, 508 U.S. at 278, our per curiam opinion in Cage v. Louisiana, 498 U.S. 39, 112 L.Ed. 2d 339, 111 S.Ct. 328 (1990), in which we accept as controlling, held that an instruciton of the sort given here does not produce such a verdict. Sullivan, 508 U.S. at 278.Petitioner's Sixth Amendment right to jury trial was therefore denied.

A mandatory presumption violates the Fourteenth Amendment, because it may relieve the State of its burden of proving all elements of the offense. Sandstrom v.Montana, 442 U.S. 510, 61 L.Ed. 2d 39, 99 S.Ct. 2450 (1979). The right to trial by jury reflects, we have said, x"a profound judgement about the way in which law should be enforced and justice administered." Duncan v. Louisiana, 391 U.S. at 155. The deprivation of that right, with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as "structural error". Automatic reversal is required.

19

EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT
CONVICTION AS NO EVIDENCE SUPPORTS CONVICTION
(Ground 5)

Because the alleged offense date was January 27, 2008, and because the
jury's verdict on the Special Issue was that the State DID NOT prove beyond
a reasonable doubt that an offense was committed on or after Sept. 1, 2007,
and finally because NO EVIDENCE remains in the record to support an offense
for on or before Sept. 1, 2007, the evidence is both legally and factually
insufficient to support a conviction in Petitioner's case, and relieved the
State of its burden of proof.

LEGAL ARGUMENT

The controlling Supreme Court precedents here are Jackson v. Virginia,
443 U.S. 307, 61 L.Ed. 2d 560, 99 S.Ct. 2781 (1979), In re Winship, 397 U.S.
358, 25 L.Ed. 2d 368, 90 S.Ct. 1068 (1970), and Thompson v. City of Louis-
ville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed. 2d 654 (1960).

The Due Process Clause of the Fourteenth Amendment "protects the accused
against conviction except upon proof beyond a reasonable doubts of every fact
necessary to constitute the crime with which he is charged." In re Winship,
397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed. 2d 368 (1970). Additionally, a pet-
itioner's due process rights are violated if a jury instruction "ha[s] the eff
ect of relieving thatState of the burden of proof" enunciated in Winship.

In Jackson v. Virginia, the Supreme COurt held a person convicted in stat
court is entitled to a judgement of acquittal under the due process clause of
the U.S. Constitution if after viewing all the evidence in the light most
favorable to the prosecution, no reasonable trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. See 443 U.S. at
318-319, 99 S.Ct. at 2788-89.

In Thompson v. Louisville, the Supreme Court held that a conviction vio-
lated due process because the record showed a complete lack of evidence to
support a conviction. See 362 U.S. 199, 199-205, 80 S.Ct. 624, 625-29, 4 L.Ed.
2d 654 (1960). The Jackson Court concluded that the no evidence standard art-
iculated in Thompson was simply inadequate to protect against misapplication
of the constitutional standard of reasonable doubt, "because [a] mere modicum
of evidence may satisfy a 'no evidence' standard." Jackson, 443 U.S. at 320,
99 S.Ct. at 2789 (quoting Jacobellis v. Ohio, 378 U.S. 184, 202, 84 S.Ct. 1676
1686, 12 L.Ed. 2d 793 (Warren, C.J. dissenting).The Jackson Court noted that
"[a]ny tandsmay evidence that is relevant----that has any tendency to make the
existence of an element of a crime slightly more probable thatn it would be
without the evidence might be deemed a "mere modicum" of evidence. See id. The

20

Supreme Court concluded that it could not seriously be argued that such a 'modicum' of evidence could by itself rationally support a conviction beyond a reasonable doubt. Id.

In a criminal trial, the State carries the burden of persuading the fact-finder that the defendant is guilty of the offense beyond a reasonable doubt. Speiser v. Randall, 357 U.S. 513, 526, 78 S.Ct. 1332, 2 L.Ed. 2d 1460 (1958) ("Due process commands that no man shall lose his liberty unless the Government has borne the burden of producing the evidence and convincing the fact-finder of his guilt."). Additionally, no shifting of the burden of persuasion is allowed. SeePattersonv. New York, 432 U.S. 197, 215, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977)("Such shifting of the burden of persuasion with respect to a fas fact which the State deems so important MI it must be either proved or pre-sumed is impermissible under the Duga Process Clause.").

Significantly, in NMXKXKX cases in which no evidence supports the judge-metn, the evidence is also insufficient to support the judgement, but in someu cases the evidence may be insufficient to support the judgement even though the no evidence standand is not satisfied. Jackson, 443 U.S. at 318-20, 99 S.C t. at 2788-89. Thus, if an appellant or an applicant for habeas corpus relief shows that no evidence supports the judgement, by definition, the evidence is also legally insufficient to support the judgement, regardless of whether the applicant asserted insufficiency. See id.

REVIEW CONSIDERATIONS

While a challenge to the sufficiency of the evidence or an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt, has always been dependent on how a state defines the offense that is charged in any given case." Patterson v. New York, 432 U.S. 197, 211 n.12, 97 S.Ct. 2319, 53 L.Ed. 2d 281 (1977); Thus, a federal court "must look to state law top determine the elements of the crime." Quartararo v. Hanslmaier, 186 F.3d R 91, 97 (2d Cir.1999).

As the juries verdict on the SPecial Issue decided that the saate failed to prove an offense on or after Sept. 1, 2007 and the alleged offense date was January 27, 2008, then the issue is settled by unanimous verdict that the alleged offense was not proven beyond a reasonable doubt.

In Jones v. United States, the Supreme Court considered the federal car-jacking statute which provides three different maximum sentences depending on the harm to the victim: 15 years wiht non-injury, 25 years with "serious bod-ily injury" and life inprisonment that death results at 18 USC §a2119 (1988)dk MX Supp. V). In spite of the Present that the statute at18USC §a2119h(1988)ledk MX

2/

bodily injury", and life in prison if death resulted. 18 USC Ss 2119 (1988 ed.
Supp. V).In spite of the fact that the statute "at first glance has a look to
it suggesting [that the provisions relating to the harm of the victim] are
only sentencing provisions," 526 U.S. at 232, 143 L.Ed. 2d 311, 119 S.Ct. 1215
the Supreme Court concluded that the harm tot he victim was an element NK to
the crime.

The Court in Ring v. Arizona, 536 U.S. 584, 153 L.Ed. 2d 556, 122 S.Ct.
2428 (200) stated "a defendant's authorized punishment contingent on the find-
ing of a fact, that fact----no Kmatter  how the state labels it---must be found
by a jury beyond a reasonable doubt." Id. at 602, 153 L.Ed. 2d 556, 122 S.Ct.
2428.The opinion made it clear that ultimately, while the procedural error in
Ring's case might have been harmless because the necessary finding was implic
it in the jury's guilty verdict," Id. at 609,"the characterization of a fact
or circumstance as an 'element' or a sentencing factor' is not the determin-
itive question 'who decides', judge or jury." Id. at 605, 153 L.Ed. 2d 556, XX
122 S.Ct. 2428.

Thus, if the Due Process CLause of the Fourteenth Amendemnt protects a
defendant against a conviction except upon proof beyond a reasonable doubt nec
essary to constitute the crime charged, see Jackson, v. Virginia, 443 U.S.
307, 99 S.CT. 2781, 61 L.Ed. 2d 560 (1979), and the constitution prohibnits
the criminal conviction of any person except upon proof of guilt beyond a
reasonable doubt, see Winship, 397 U.S. 358, then the jury in the instnat
case did not find for all facts necesszAry to convict, based on the verdict on
the SpeciaļlIssue. Truly an acquittal is an acquittal, even "when a jury
returns inconsistent verdicts, convicting on one count and acquitting on
another count, where both counts turn on the very same issue of ultimate
fact." Bravo-Fernandex, 580 U.S. at 8, 137 S.Ct. 352, 196 L.Ed. 2d 242. See KK
Ground 2, Double Jeopardy Claim.

As cause to excuse any procedural default, petitioner asserts a miscarri
iage of justice exception and wishes to pass through the actual innocence
gateway of Schlup v. Delo, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed. 2d 808 (
(1995). See "Miscarriage of Justice" arguemnt, this brief.

For this Ground Five, please reference the "Overcoming AEDPA" arguments
presented in Ground 1. (But for Double Jeopardy vóolation, but for 5th & 6th
Amendment violation, and no evidence exisitng for PRIOR to Sept. 1, 2007,
no reasonable jurists would have found the TCCA's decision reasonable.

OVERCOMING AEDPA

Ussery must meet his full burden under AEDPA and demonstrate that the TCCA's decision was contrary to or an unreasonable application of clearly established federal law. Harington v. Richter, 562 U.S. 86, 100-101 (2011). That is, he must demonstrate that all fairminded jurist would find the TCCA's determination unreasonable. Id at 101-02.

As Ussery ahs established among other claims, a Double Jeopardy violation (See Grounds 2 & 30), he has shown that the TCCA's decision was contrary to or an unreasonable application of clearly established double jeopardy XXXX XXXSHX law Because a double jeopardy violation is present, ALL fairminded jurist would find the TCCA's determination unreasonable as to Ussery s actual innocence claim, and those claims for which an actual innocence exception will allow review

Responde t's Answer pg. 17 asserts that, by denying these claims based on the findings and an independant review of the record the TCCA made explicit and implicit credibility determinations in favor of the State and defense counsel. Both explicit and implicit credibility choices made by a State court are afforded a presumption of correctness under 28 USC 2254(d). Self v. Collin Collins, 973 F.2d 1198, 1214 (5th Cir.1992)(citing Lavernia v. Lynaugh, 845 F 2d 493, 500 (5th Cir.1988).

Ussery. relies on the same authjortiy for the contention that, implicit in the jury s verdict at trial on the Special Issue is that the State did NOT find the alleged victim credible Further, State Respondents contention that in State habeas proceedings defense counsel was implicitly found credible, this is reference to counsel's submitted affidavit -which if found credible, includes attachments of counsels letters which supports additional claims by petitioner of the advice given by counsel and promises made.

As Respondent asserts, an evidentiary hearing is precluded unless: (1) a petitioner's claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) the petitioner establishes by clear and convincing evidence that, but for constitutional error. no reasonable factfinder would have found him guilty 28 USC 2254 (e)(2).

The petitioner cascan establish he is actually innocent in that, but for a double jeopardy violation, no reasonable factfinder would have found him guilt. A review of the facts presented in Ground 5 of State application also establishes factual innocenc. An applicant may prove actual innocence (and therefoee cause to excuse default to review of any claim) by providieg facts sufficient to establish "that by a preponderance of the evidence, but for [the double jeopardy violation] no rational juror could have foudn the applicant guilty beyond a reasonable doubt/" Ex parte Knipp, 236 S.W. 3d 214, 217 (2007) ; Ex parte Milner, 394 S.W. 3d 502, 505-06 (2013).

BARKER ASSESSMENT/REASSESSMENT

A. Length of Delay

The Courts first look to the length of delay because to trigger a speedy trial analysis, an accused must allege that interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." Doggett v. United States, 505 U.S. 647, 651-52, 112 S.Ct. 2686, 120 L.Ed. 2d 520 (1992). The "tarting point for measuring the length of the delay is arrest or indictment, whichever comes first. United States v. Mac-Donald, 456 U.S. 1, 6-7, 102 S.Ct  1497, 71 L.Ed. 2d 696 (1982); United States v. Serna-Villareal, 352 F.3d 225, 232 (5th Cir.2003). "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into other factors that go into the balance." Barker, 407 U.S. at 530. The Fifth Circuit has held that "[i]f the delay reaches the threshold level of one year, it is 'presumptively prejudicial' and requires the Court to engage  in the speedy trial analysis, balancing the remaining factors." United States v. Cardona, 302 F.3d 494, 497 (5th Cir.2002).

If the Court finds a presumptively prejudicial delay, it then weighs "the length of the delay  the reason for the delay, and defendant's diligence in asserting his or her rights...against the prejudice to the defendant." United States v. Serna-Villareal, 352 F.3d 225, 930 (5th Cir.2003).

The Court of Appeals did find the 3 1/2yr delay presumptively prejudicial and to weigh heavily against the state. See Ussery, 596 S.W. 3d at 285. This finding would fall in line with the Fifth Circuit case of Amos v. Thornton, 646 F.3d 199, 206-07 (5th Cir.2011)(reasoning that a delay of less than thirty months precludes the first Barker factor from "strongly favor[ing] the accused.")"A delay must persist for at least eighteen months over and above [one year] to strongly favor the accused.").

Thus, where 30-months is the threshold of "strongly favor[ing] the accused", then the trial court and the COA's finding for delay of 3 1/2yrs to Weigh heavily against the state," is in line with this decision of the Fifth Circuit.

B. Reason for Delay

"Length of delay was attributable to a natural disaster." See Ussery, 596 S.W. 3d at 286. Because of this partial finding, the 1st COA found in favor of Ussery, albeit "not as heavily.  The weight assigned to a State's reasons for post-accusation delay depends on the reasons proffered. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. At one extreme, a deliberate delay to disadvantage the

24A

defense is weighted XXXXXXX heavily against the state. Id. At the other end of the spectrum, delays explained by valid reasons or attributable to the conduct of the defendant weigh in favor of the state. See Cowart v. Hargett, 16 F.3d 642, 647 (5th Cir.1994)(discussing Barker).

Between these extremes fall unexplained or negligent delays, which weigh against the State, "but not heavily." Id. See also Barker, 407 U.S. at 531, 92 S.ct. 2192 (viewing negligence as a "more neutral reason . [that] xhx should be weighed less heavily" than an intentional delay). The COA's decision would compart with the 5th Circuit and Supreme COurt decisions, even more so when combined with the state trial court's finding that the State did not have an explanation for 18-months of the delay, as it "did not provide evidence for why the casew could not be tried before 2018." (RR V7 p.55). Ussery asserts that hhis finding contains an implicit finding of the converse---that the State also did not provide evidence that any attributabkle delay was not intentional and for that reason the reason for delay should weigh heavily in favor of Ussery.

## C. Assertion of Right

The trial court found that Ussery submitted between eleven and thirteens pro se motions for speedy trial. The "record suppoirts this finding and demonstrates that Usser¦¦ first made a speedy trial request in May 2016 that was noted in writing on the reset form signed by the Court coordinator and filed with the trial court. Ussery, 596 S.W. 3d at 287. In addition to his pro se motions, Ussery filed a petition for writ of mandamus seeking a ruling on his motions for Speedy Trial. See In re Ussery, No. 01-17-00477-CR, 1-17-00478-CR & 01-17-00479-CR, 2017 Tex.App.LEXIS 10076, 2017 WL 4820173, at *1 (Tex.XXXX App.--Houston [1st Dist.] Oct. 26, 2017, orig., proceeding).

"[A]nd he filed a letter with the trial court asking that his motions be heard. Ussery's trial counsel filed a motion to dismiss for denial of speedy trial on May 18, 2018, less than a month before the case went to trial. & Ussery's counsel asserted at the hearing on the motion to dismiss that he adopted Ussery's pro se motions in the months leading up to trial in 2018, but the clerk's record does not contain any written filing to that effect. The trial court thus found that 'whether the motions were adopted by Defense counsel or not...the number of motions filed by Mr. Ussery, his effort to have the Court of Appeals even intervene, would certainly be evidence of his assertion of his right to speedy trial." Id. at 287. However, the COA found that because counsel failed to file a motion for speedy trial, and therefore, found "this factor does not weigh strongly against the State." Id. at 288.

*24 B*

Ussery argues that his pro se motions and other filings themselves establish that Ussery adequately asserted his speedy trial rights. Such an assertion "is entitled to strong evidentiary weight." Barker, 407 U.S. at 531, 92 S.Ct. at 2192, because the expectation is that such demand provides prosecutor's with the opportunity "to refdress any deprivation" and courts with the "assurance that a defendant sincerely desires a speedy trial." Gray v. King, 724 F.2d 1199 at 1204 n.7 (5th Cir.1984). Original prosecutor Allen Otto acknowledged during testimony in pretrial hearing on 'motion to dismiss for denial of speedy trial' that on "numerous occcasions" Ussery had filed pro se motions for speedy trial and "there was also a motion for a Faretta hearing that I really wanted to make sure there was soimething on the record that laid that Mr. Ussery was waiving his right to a Faretta hearing, because he had asked for one." (R V2 Pg.21). This is sufficiently clear and convincing evidence that the State was given the opportunity "to redress any deprivation" and also the court had the necessary "assurance that [] defendant sincerely desire[d] a speedy trial," Gray, at 1204 n.7, and this would be so regardless that counsel failed to formally file a request.

Additionally, it was acknowledged by thhe trial court ---and COA---that counsel shose to adopt Ussery's pro se motions for speedy trial, yet the COA and trial court rejected the contention that this would establish that a formal request was made. However, this is contrary to State lawestablished by the Court of Criminal Appeals which existed at the time of trial. See Robinson v. State, 240 S.W. 3d 919 at 921 (2007)(appointed counsel may adopt their clients pro se motions just as substitute or subsequent counsel may adopt all motions on file presented by prior counsel). If counsel acted in accordance with this law, then it was not failure of counsel to assert right formally----it was an abuse of discretion to not correctly apply the law to the facts. Accordingly, this factor should weigh heavily in favor of Ussery.

D. Prejudice

In Doggett v. United States, 505 U.S. at 655, the U.S. Supreme Court noted that a defendant can be relieved of the burden of proving actual prejudice where the first three Barker factors weigh so heavily in favor of the defendant that prejudice is to be presumed. See United States v. Serna-Villareal, 352 F.3d 225 at 230-231 (5th Cir.2003).

24C

CUMULATIVE ERROR FOR GROUNDS 6, 7,8, &9 FOR DENIAL OF APPLICANT'S RIGHT
TO COUNSEL AND RIGHT TO SPEEDY TRIAL

Petitioner has argued that (Ground Six: Counsel failed to present facts
and arguments to show how defensive theory presented in Grand Jury Packet was
impacted by the death of the witness and impacted applicant's ability to test-
ify without fear of prejudice nor could testimony be presented in the face of
witness' death---See Grand Jury Packet --DX-E, RR V2 p.9, RR V3 EX-E));(Ground
7: failed to formally for the record demand speedy tiral---the 1st COA decid-
ed the absence of request by counsel did not satisfy the 3rd prong of Barker
factors--see Ussery v.State, 596 S.W. 3d 277 at 288 (2019)); (Ground 8: failed
to argue pretrial anxiety & prejudice in state's rleiance on applicant's bond
revocation when considering prejudice factor caused by pretrial incarceration)
;and (Ground 9: Failed to show deceased witnesses' notarized statement was
work product of original Defense counsel and not the State); Cumulatively,
these issues, ifproperly raised and argued would have changed the consider-
ations for each factor of Barker v. Wingo, 407 U.S. 514, 515, 92 S.Ct. 2182,
33 L.Ed. 2d 101 (1972).Because each factor weighed individually before being
weighed together collectively would impact the Barekr factors in a pronounced
and indescernable way because no single factor decides the Barker test; they
are decided together. See Grounds 6-10.

LEGAL ARGUMENT

The Supreme Court has established that the continued effect of multiple
trial court errors violates due process where it renders the resulting trial
fundamentally unfair.Chambmers v.Mississippi, 410 U.S. ▓▓▓ ▓▓▓ 284 at 298
(1973)(with the combined effect of individual errors "we conclude that the ex-
clusion of this critical evidence, coupled wiht the state's refusal to permit
Chambers to cross-examine [,] denied [Chambers] a trial in accord wiht tradit-
ional and fundamental standards of due process and deprived Chambers of a
fair trial.").

In order to declare a denial of [due process] wesee must find that
fairness fatally infected the trial; the acts complained of must be of such
quality as necessarily prevent a fair trial." Lisenba v. California, 314 U.S.
219, 236, 62 S.Ct. 290, 290, 86 L.Ed. 166 (1941).

As the Supreme Court stated "Beyond the specific ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓ guarantee enumerated in the Bill of Rights, the Due Proc-
ess Clause has limited operation.We therefore have defined the category of in-
fractions that violate 'fundamental fairness' very narrowly," Dowling v. Unite.
ed States, 493 U.S. 342, ▓352, 110 S.Ct. 663, 674, 107 L.Ed. 2d 708 (1990)".

24

"[W]hile recognizing that formulating a complete definition of unconstitutional cumulative error is not feasible, we can at least eliminate certain types of complaints that should generally not be considered in cumulative error review. By this process of elimination, minimum standards at least normally applicable to a cumulative error claim of constitutional dimension may be expressed. Derden v. McNeel, 978 F.2d at 1458.

The Fifth Circuit in Derden v. McNeel set out considerations enumerated in the Supreme Court case of Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed. 2d 368 (1973). The same four are considered here:

First, any cumulative error theory must refer only to errors committed in the state trial court. A habeas petitioner may not just complain of unfavorable rulings or events in the effort to cumulate errors. See United States v. Rivera. 900 F.2d 1462, 1470-71 (10th Cir.1990)(en banc); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir.1987)("Twenty times zero equals zero") If an action of the trial court cured a putative error, the petitioner is complaining only of an adverse event rather than actual error. Donnelly, 416 U.S. at 645, 94 S.Ct. 1872.

Second, the error complained of must not have been procedurally barred from habeas corpus review. See, e.g., Coleman v. Thompson, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed. 2d 640-(1991).

Third, errors of state law, including evidentiary errors, are not cognizable in habeas corpus as such. Estelle v. McGuire, 502 U.S. 62, 67, 112 S.Ct. S.Ct. 475, 116 L.Ed. 2d 385 (1991). Errors of state law rise to constitutional dimension only if they "so infused the trial with unfairness as to deny due process of law." Lisenba v. California, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941).

Fourth, the federal court must review the record as a whole to determine whether the errors morelikely than not caused a suspect verdict. Kirkpatrick v. Blackburn, 777 F.2d 272, 281 (5th Cir.1985), cert denied, 476 U.S. 1178, 106 S.Ct. 2907, 90 L.Ed. 2d 993 (1986).

The standard for an ineffective assistaNCE OF COUNSEL CLAIM is Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984). The errors complained of establish that counsels performance was deficient and the prejudice of the cumulative impact was that petitioner was denied an opportunity to present a defensive argument upon the death of this witness, and the cumulation of errors for grounds 6, 7, 8, & 9 together prevented the court from making a fair assessment for the Barker factors

TRIAL COURT CONSTRUCTIVELY AMENDED THE INDICTMENT BY INSTRUCTING THE
JURY TO CONSIDER DATE RANGE PRIOR TO SEPT. 1, 2007
(Ground 12)

The jury's verdict on the Special Issue was unanimous that the State DID
NOT PROVE beyond a reasonable doubt that defendant committed the alleged
offense on or after Sept. 1, 2007.(RR V10 p.107). Yet the judge instructed
the jury to sentence petitioner to a lesser offense not submitted to the jury
which existed PRIOR to Sept. 1, 2007, which turned on the very same issue
of ultimate fact--the date (and impliedly, the defendant's lack of opport-
unity). Id.

### LEGAL ARGUMENT

The necessity of providing both the essential elements of the crime
charged and sufficient facts regarding the offense is grounded in the Fifth
and Sixth Amendments to the U.S. Constitution. Hamling v.United States, 418
U.S. 87, 94 S.Ct. 2887, 41 L.Ed. 2d 590 (1974); Russell v. United States,
369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed. 2d 240 (1962).See United States v. Lee,
359 F.3d 194 (3d Cir.2004)(where trial evidence has amended indictment by
broadening possible basis for conviction from that which appeared in indict-
ment, variance violates defendant's substantial right to be tried only on
charges returned by grand jury).

If the indictment does not provide enough information to enable the def-
endant toprepare a defense, the indictment is considered vague, offending the
Due Process Clause. Id. See also United States v. Pirro, 212 F.3d 86 (2d Cir.
2000)(indictment that fails to allege essential elements of crime charged
deemed unconstitutional; see Jones v. United States, 526 U.S. 227, 119 S.Ct.
1215, 143 L.Ed. 2d 311 (1999)(distinguishing between essential facts, which
must be raised in indictment and sentencing considerations which need not be.)

For example, indictments charging offenses which require scienter, a
knowing or willful state of mind in connectionwith the alleged criminal acts,
have been held defective when the indictment did not contain language char-
ging the requiremed mental state. Hagner v. United States, 285 U.S. 427, 52 S
Ct. 417, 76 L.Ed. 861 (1932).In another example, an indicmtnet charging an
aggravated drug offense under 21 USC Ss 841(b)(1)(A) is defective if it does
not factually allege the drug quantity involved in the charged offense.
United States v. Dupree, 2017 U.S.App. LEXIS 166603 (2d Cir.2017).

One issue in terms of the indicmant is when the defendant is charged
with a crime that authorizes an enhancement. In Apprendi v. New Jersey, 530
U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000) the Supreme Court held that
the Sixth Amendment based on the right of jury ... the Constitution ...

26

the Sixth Amendment mandates that "other than the fact of a prior conviction,
any fact that increases the penalty for a crime beyond the prescribed statutory
maximum must be submitted to a jury, and proved beyond a reasonable doubt."
530 U.S. at 490; see also United States v. Promise, 255 F.3d 150, 156-57
(4th Cir.2001)(en banc)(holding that when applying Apprendi to a federal pro-
secution, a fact that increases the maximum penalty "must be treated as an ele
ment of an aggravated---offense is.e., charged in the indictment and proved
to the jury beyond a reasonable doubt").

A court cannot amend an indictment to add an essential element. Russell,
supra at 770-71.Only the grand jury can make such an amendment. Id. at 769-70;
United States v. Delgado, 256 F.3d 264 (5th Cir.2001)(only grand jury can amend
indictment).

## Standard of Review

Constructive Amendment claims [are reviewed] de novo. United States v.
Thompson, 647 F.3d 180, 183 (5th Cir.2011). The seminal case on this issue is
Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 252 (1960). In
Stirone, the Supreme Court considered whether there had been a constructive am
endment of hte indictment in a Hobbs Act prosecution. The indictment charged
the defendant with using his union position to 'unlawfully obstruct, delay
[and] affect interstate commerce ....and movement of [sand] by extortion." Id.
at 213-14. Over defense counsel's objection, the district court allowed the
jury to convict the defendant on either basis. Id. Assuming there was suffic-
ient evidence on the record to convict the defendant under either theory and
that the evidence did not surprise the defendant,t he Third Circuit affirmed
the conviction. United States v. Stirone, 262 F.2d 571, 574 (3d Cir.1958).

The Supreme Court reversed, concluding that "when only one particular
kind of commerce is charged to have been burdened[,] a conviction must rest on
that charge and not on another, even though it be assumed that under an indict
ment drawn in general terms as conviction might rest upon a showing that
commerce of one kind or another had been burdened." Stirone, 361 U.S. at 218.

The 5th Circuit has interpreted Stirone many times when the indictment
alleges a particular set of facts as forming the basis of the defendant's vio-
lation of a statute, but the trial court allows evidence of other facts not
alleged in the indictment to form the basis of the jury's guilty verdict,
[the 5th Circuit] court finds a constructive amendment. E.g., United States v.
Hoover, 467 F.3d 495, 502 (5th Cir.2006)(alleging one false statement in in-
dictment but proving another at trial was constructive amendment).

Particular to the case at ahand, petitioner wishe[1] to rely on Stirone, an

and calls to the courts attention a ruling byt the Third Circuit in United States v. Goldstein, 502 F.2d 526 (3d Cir.1974), the the Court decided that when a filing date was a substantial element of the offense, going to the requisite mens rea, proof of a different filing date DID constitute a constructive amendment.

"Stirone requires that courts distinguish between constructive amendments of the indictment which are reversible per se, and variances between indictment and proof, which are evaluated under the harmless error doctrine.IN The accepted test is that a Constructive Amendment of the indictment occurs when the jury is permitted to convict the defendant upon a factual basis that effectively modifies an essential element of the offense charged [in the indictment].... In such cases, reversal is automaticm, because the defenddnt may have been convicted on a ground not charged in the indictment."... United States v. Chambers, 408 F.3d 237, 2005 WL 995671 (5th Cir.2005)(quoting United States v. Adams, 778 F.2d 1117, 1123(5th Cir.1985).

Accordingly, because the trial court's instructions allowed the jury to "convict [Ussery] based on an alternative basis permitted by the statute, but not charged in the indictment,"Partida, 385 F.3d at 557 (citing Daniels, 252 F.3d at 414), this Court should reverse and remand or render an acquittal, as the State's assumption that evidence produced at trial supported an offense as having been committed PRIOR to Sept. 1, 2007 is not supported by the record, and rested on the "ame issue of ultiamte fact.

### State Law Considerations In Review

The Texas Court of Criminal Appeals has stated that to deteramdne whether the State has met its burden under Jackson toù prove a defendant guilty beyond a reasopnable doubt [the tewiew for variance claims], we compare the elements of the crime as defined by the hypothetically correct jury charge to the evidence adduced at trial. See Malik v. State, 953 S.W. 2d 234, 240 (Tex.Crim.App. 1997). A hypothetically correct jury charge is one that "accurately sets out the ;law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. Id. The "law as authorized by the indictment" consists of the statutory elements of the offense and those elements as modified by the indictment. See Curry v. State, 30 S.W. 3d 394, 404 (Tex.Crim.App.2000). For example, although the State may be permitted to plead multiple statutory manner and means in the charging instrument, it could choose to plead only one. However, in doing so, the State is required to prove that the defendant committed the alleged crime using that specific statutory manner and means of

committing the crime it did not plead in the charging instrument. Cade v. State, 334 S.W. 3d 766, 773-74 (Tex.Crim.App.2001)(footnote omitted)("[I]f the ...offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually in the indictment. And the sufficiency of the evidence is measured by the specific alternative elements that the State has alleged in the indictment").

Though a hypothetically correct jury charge is the state level way, the fconsideration in Stirone when reviewing a constructive amendment was that in that case it was an amendment due to an assumption that there was suffi-cient evidence on the record to convict the defendant on a basis other than the original theory propounded by the prosecution. Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed. 2d 252 (1960). Likewise, in Ussery's case the State propounded a theory of prosecution that the defendant MET the mother of the alleged victim IN 2008 and said so in a pretrial hearing. See State Habeas Appendix A-6, A-8, A-1. The state also insisted it was only prosecuting the 'child under six' offense as its own "different" offense. (RR V2 p.44). The child under six offense was enacted on Sept. 1, 2007. See Tex. P.C. 22.021(f)(1). To change to a pre-Sept. 1, 2007, the state constr-uctively amended the indictment in the instant case, because the state att-empted or did change its theory of prosecution and the Supreme Court has ruled, "when only one particular set kind of offense is charged to have been burdened[,] a conviciton must rest on that charge and not another, even though it be assumed that under an indictment drawn in general terms a con-viction might rest on a showing that [an offense] of one kind or another had been burdened." Stirone, 361 U.S. at 215, 218-19.

The reviewing court might further consider the amendment to be the result of faulty reasonable doubt instructions. If so, then further still, based on Sullivan v. Louisiana, 508 U.S. 275 (1993), constitutionally deficient criminal jury instruciton as to definition of reasonable doubt, for purposes of proving guilt beyond reasonable doubt was held not ame3nable to harmless error analysis, is "structural" inu nature, and is reversible as the prosec-ution bears the burden of proving all elements of the offense "beyond a reasonable doubt." 508 U.S. 277, 278. In the instant case, jury's verdict on the Special Issue, the reviewing court can determine that the jury determin ed beyond a reasonable doutb that the state DID NOT prove an offense was comm-itted on or after Sept. 1, 2007 (RR V10 p.107)(though the alleged offense date was January 27, 2008).

INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO MEET MCCOY REQUIREMENTS
(Ground 13)

Petitioner raised an IAC claim relying on the authority of McCoy v.
Louisiana, 584U.S. 414 (2018) where the Supreme Court XXXXXXXXXXXX decided
allowing counsel to concede guilt at the sentencing phase of trial when his
client had pled not guilty, violated the Sixth Amendmnet. Thus, the State's
response was contrary to McCoy and an unreasonable application of the Strick-
land standard in that Ussery can overcome any procedural bar to review with
the miscarriage of justice exception and the actual innocence gateway of
Schlup v. Delo, 513 U.S. 298, XX63 115 S.Ct. 851, 130 L.Ed. 2d 808 (1995).

Additionally, the factsw of this case show that the burden of proof which
shifted to the defendant whi9ch manifested a conflict of intere!!t and is supp-
orted by the conclusion reached in Granger v.State, 850 S.W. 2d 513 (1993), "it
appears that the State simply chose not to pursue a conviction for that off-
ense, although the[defendant] was in jeopardy as to that xooffense.... There-
fore, with respect to the [lesser] offense, Stata trial was abandoned or
aborted by the State without manifest necessity." In the instant case, a
directed verdict was requested by the defense (RR VIOXXXR 7 p.82), yet the
Court ordered the defense to argue for an offense range prior to Sept. 1, 2007
when submitting the Special Issue. (SSEe RR V10 p.107).

### Standard Of Review

It is of course well-settled that the fact that constitutional error
occurre in the proceedings that led to a state-court conviction may not alone
be sufficient reason for concluding that a prisoner is entitled to the remedy
of habeas. See, e.g., Stone v. Powell, 428 U.S. 465, 49 L.Ed. 2d 1067, 96 S.Ct
3037 (1976); Brecht v. Abrahamson, 507 U.S. 619, 123 L.Ed. 2d 353, 113 S.Ct.
1710 (1993). On the other hand, actors that undermine confidence in the funda-
mental fairness of the state adjudication certainly justify the issuance of
the federal xwrit. See, e.g., Teague v. Lane, 489 U.S. 288, 311-314, 103 L.
Ed. 2d 334, 109 S.Ct. 1060 (1999)(quoting Mackey v.United States, 401 U*.S.
667, 692-694, 28 L.Ed. 2d 404, 91 S.Ct. 1198 (1962)(opinion Harlan. J.XXXXXXXXX
xxconcurring in judgemants in part and dissenting in part), and quoting Rose
v. Lundy, 455 U.S. 509, 544, 71 L.Ed. 2d 379, 102 S.CT. 1198 (1982)(Stevens, J
dissenting). The deprivation of the right to the effective assistance of
couonsel recognized in Strickland is such an error. Strickalnd v.Washington,
466 U.S. at 686, 697-698.

Counsel's failure in this case to identify the conflict of interest or
arguing for guilt or sentence under the pre-Sept. 1, 2007 statute of P.C.
22

22.021 in the sentencing phase when his client pled not guilty, was deficient performance.There were mitigating factors which should have been addressed as a matter of acquittal.It canalso be said that counsel's failure to request a directed verdict onthe mitigating evidence already raised and used to submit the Special Issem was deficient performance.Specifically, counsel's failure to address charge issues as promised (arguably, he did), resulting in the above deficiencies was significant and was "below the range expected of reasonable professional competent assistance of counsel." Williams v. Taylor, 529 U.S. 362, 371 (2000).Counsel's performance thus "did not measure up to the standard required under the holding of Strickland v. Washington, 466 U.S. 668, 80 LED. 2d 674, 104 S.Ct. 2052 (1984), and [if it had] there is a reasonable probability that the result of the proceedings would have been different.Trial would have resulted in an acquittal, as indicated by the verdict on the Special Issue. (See RR V10 p.107).

A recent decision which was made by the 4th Circuit agrees with the petitioner's position that he wan overcome AEDPA deference. See United States v. Hashimi, 2024 U.S. App. LEXIS 19330, 110 F.4th 621 (4th Cir.2024)(The district court erred in denying appellant an evidentiary hearing on his claim that his Sixth Amendment rights were violated under McCoy v. Louisiana when his attorney conceded guilt on two charges and the record did not conclusively establish whether counsel satisfied his McCoy obligations to consult with appellant before conceding guilt.).

In considering the McCoy Issue, the court juxtaposed that case with Florida v. Nixon, 543 U.S. 175, 125 S.Ct. 551, 160L.Ed. 2d 565 (2004), an earlier case that also involved a concession of guilt at trial.In McCoy, the district court reasoned, the defendant "vehemently protested his attorney's decision to concede guilt...at every opportunity." Hashimi, at "*8. By contrast, Nixon held a guilt concession acceptable where counsel had explained his plan to the defendant several times and the defendant "made no attempt to respond, object, or make inquiries," Id.

The Sixth Amendment "contemplat[es] a norm in which the accused, and no lawyer, is a master of his own defense." Gannett Co. v. DePasquale, 443 U.S. 368, 382 n.10, 99 S.Ct. 2898, 61 L.Ed. 2d 608 (1979). To that end, the Supreme Court has reserved for a criminal defendant the right to make "certain fundamental decisions "about his defense no matter how strongly his lawyer may disagree." United States v. Roof, 10 F.4th 314, 351 (4th Cir.2021).Some decisions are so fundamental that they are "reserved for the client," including "whether to plead guilty, wave the right to a jury trial, testify in one's

31

own behalf, and forgo an appeal." McCoy, 584 U.S. at 422.

McCoy added to that latter category "the decision whether to maintain innocence or concede guilt at trial. Id. See also Kellog-Roe, 19 F.4th at 267.

It follows, the Court held, that a defendant has a Sixth Amendment autonomy right to make the choice for himself.Id. at 425-27.And, critically, because counsel's strategic decisions and competence are not at issue, a violation of that autonomy right is not subject to the Strickland standard for ineffective assistance which requires a showing of prejudice.Id. at 426 (citing Strickland, 466 U.S. at 692). Instead, a violation of the Sixth Amendment autonomy right is a structural error, entitling the defendant to a new trial without the need to XXXXXshow prejudice, because the error both negates the defendant's "right to make[] fundamental choices about his own defense," and impactso the trial in ways that are "immeasurable." Id. at 427-28. However, in the instant case, petitioner argues that the acquittal reached entitled petitioner to acquittal of the greater AND the leser offense because each was determined by the same issue of ultimate fact.

Unlik in the case in M?cCoyn or Nixon, in Ussery's case, defense counsel was required by statute to raise3 the defensive issue concerning the date in the sentencing phase. See Tex. C.C.P. 37.07; Tex. P.C. 22.021Xg(f)(1). XXXXXXX Therefore, this was not a strategic choice by counsel, it was MANDATORY procedure under the charged offense.Id. Had defendant been charged with the statute existing prior to Sept 1, 2007, he could have raised the defense iXXXXXXXX thexguiltxphasexofxtrialxandxthanxhopexforxmerxyx issue in the guilt phase of trial. In McCoy, defense counsel determined that "the most promising means to avert a sentence of death" was to concede guilt at the guilt phase of trial and then hope for mercy at the sentencing phase; this occurring in Nixon. See Nixon, 543 U.S. at 178, 190-91.Ussery's case is more akin to McCoy who vocally opposed his counsel's "assertionof his guilt at every opportunity." 584 U.S. a at 424.In Nixon, counsel "attempted to explain this [concession] strategy to Nixon at least three times, "and each time, Nixon "was generally unresponsive" and "never verbally approved or protested" the concession. Nixon, 543 U.S. at 181;McCoy, 584 U.S. at 424. In those circumstances, the court held, the client effective abdication of his right to choose allowed counsel to make the decision instead.Nixon, 543 U.S. at 192. But essential to Nixon Court's holding wa was the lawyer's efforts to leave the decisionwith the client: "When counsel informs the defendant of the strategy counsel believes to be in the defendant' best interest and the defendant is unresponsive, counsel's strategic choice is

not impeded by any blanket rule demanding the defendant's explicit consent."
Id.; see McCoy, 584 U.S. at 424 (discussing Nixon).

Of course NXXXXX a client could, as McCoy himself did, stand up in court
and disavow his lawyer's concession. See McCoy, 584 U.S. at 431. But the court
would have admonished client outbursts. See Jordan v. Hargett, 34 F.3d 310, 314
(5th Cir.1994)(calling it "inappropriate" to require a defendant "personally
to make...a record" of a dispute between him and his lawyer by "speak[ing]
out of XKNX turn" in court).

Petitioner does not forgo his reliance on his many objections to the
charged offense and date range, and the fact that he contends any fault is not
the fault of counsel but is squarely the fault of the state.

c                              REVIEW

The Supreme Court in Weaver v. Massachusetts, 137 S.Ct. 1899, 1911 L.Ed.
420 (2017) considered whether a defendant "must show prejudice in a case...in
which a structural error is...[not] raised on direct review but is raised
]later via a claim alleging ineffective assistance of counsel." Id. at 1907.
The court noted the doctrines "are intertwined, for the reason an error is
deemed structural may influence the proper standard used to evaluate an
ineffective assistance claim." Id.

The Weaver Court considered whether "under a proper interpretation of
Strickalnd, even if there is no showing of a reasonable probability of a diff-
erent outcome, relief still must be granted if the convicted person shows that
attorney errors rendered the trial fundamentally unfair." Id. The Court high-
lighted that for an ineffective assistance of counsel claim "the ultimate
inquiry must concentrate on "the fundamental fairness of the proceeding'."
Id. at 1911 (quoting Strickland, 466 U.S. at 694).

Of note by the Seventh Circuit on this matter when rendering an opinion
in Lindh v. Murphy, 96 F.3d 856, 869 (CA7 1996), noting:

> This extends the principle in Teague v. Lane, 489 U.S. 288, 103 L.Ed. 2d
> 334, 109 S.Ct. 1060 (1989) by limiting the source of doctrine on which a
> federal court may rely in addressing the applicaiton for a writ. It does
> not, however, purport to mlimit the federal court's independent interpret-
> XXXXX ive authority with respect to federal questions." Ibid. (quoted by
> Williams v. Taylor, 529 U.S. at 381.

McCoy v. Louisiana, 584 U.S. 414 (2018) was decided in May of 2018 and
thus was clearly established Supreme Court authority for which petitioner's
IAC claim relies on in part.  Section 2254(d) requires us to give state
courts opinions a respectful reading and to listen carefully to their con-
clusions, but when the state court addresses a legal question, it is the law '
'as determined by the Supreme Court of the United States' which prevails."
Lindh, 96 F.3d at 869.

*33*

THe threshold question under AEDPA is whether Ussery seeks to apply a rule of law that was clearly established at the time his state-court conviciton became final. The merits of his claims are squarely governed by Strickland v. Washington, 466 U.S. 668, 80 L.Ed. 2d 674, 104 S.Ct. 2052 (1984).The Stricklan and standard was clearly establûshed federal law when Ussery's case was decided and McCoy was as well.

However, because the state court, instead of addressing the qwestion, asserted a procedural bar to review, Usseery seeks to pass through the actual innocence gateway of Schlup v. Delo, 513 U.S. 298, 1155 S.Ct. 851, 130 L.Ed. 2d 808 (1995) and asserts that a miscarriage of justice has occurred.

*34*

REQUEST FOR INDEPENDENT CONSIDERATION OF CENTRAL ISSUE OF CONFLICT OF
INTEREST AS CAUSING A PLEA WHICH WAS UNKNOWINGLY AND INVOLUNTARILY MADE XXXXXX
(There is precedent for Review of Involuntary plea not previously raised)

Petitioner raised multiple claims concerning the manner in which convict-
ion was obtained by: improper argument(and conflict of interest) by defense
counsel; trial court error; inducement by misrepresentations made by the state
and counsels advice, among other related issues. See Grounds 4, 11, 12, 13, 20
29, and 30, federal writ. Other related issues (i.e. reasonable doubt instr-
uctions, ex post facto violations) are raised throughout application and are
not limited to those listed here. Counsels arguments during the sentencing
phase concerning the special issue (and arguing for pre-Sept. 1, 2007 sentence
at courts instruciton) can be construed as the entering of a plea of guilt,
which was in conflict with the defendants entry of 'Not Guilty'. (See Ground
13, Conflict of Interest; See also Ground 20, Improper Legal Advice).

However, entry of a plea in this manner is not common-place and is cert-
ainly not traditional. Therefore, it should be no surprise to this court that
petitioner did not raise a traditional ground for review of an entry of an in-
voluntary and unintelligent, unknowing, guilty plea; Yet, taking several of ps
petitioner's grounds together, the arguments raised fairly present, and are in
support of, the character of the proceedings resulting in an involuntary and
unknowing guilty plea, violating defendant's Fifth Amendment Right against
self-incrimination, defendant's Sixth Amendment Right to trial by jury, and his
his right to confront one's accusers, all made applicable to the state's by
way of the Fourteenth Amendment.

LEGAL ARGUMENT

Petitioner believes that his contentions are supported by the authority
of Boykin v. Alabama, 395 U.S. 238 (1969), and the same authority supports
this issue may be able to be reviewed under the PLAIN ERROR doctrine.

In Boykin, the petitioner pleaded guilty to five indictments. So far as x
the record shows, the judge asked no questions of petitioner concerning his
plea, and petitioner did not address the court. 395 U.S. atx 239.

On their own motion however, four of the seven [Supreme Court of Ala-
bama] justices discussed the constitutionality of the process by which the
trial judge had accepted petitioner's guilty plea. From the order affirming kx
the trial court, three justices dissented on the ground that the record was
inadequate to show that petitioenr had intelligently and knowingly pleaded
guilty. The Fourth member concurred seperately, conceding guilt that "a trial
judge should not accept a guilty plea unless he has determined that such a
plea was voluntarilyand knowingly entered by the defendant," but refusing

35

"[f]or aught appearing" "to presume that the trial judge failed to do his duty." 281 Ala. at 662, 663, 207 So 2d at 414, 415. The XXXXXX Supreme Court of the United States granted certiorari. 393 U.S. 820, 21 L.Ed. 2d 93, 89 S. Ct. 200. See Boykin, 395 U.S. at 240-241.

The Court considered whether it "lack[ed] jurisdiction to review the voluntary character of petitioner's guilty plea because he failed to raise that federal question below and the state court failed to pass upon it. But the question was raised on oral argument and [the Court] conclude[d] that it is properly presented. 395 U.S. at 241.

The Supreme Court in Boykin acted in concert with the ruling of the Alabama Supreme Court which stated:

"Perhaps it is well to note that in reviewing a death case under the auto matic appeal statute,... we may consider any testimony that was serioously prejudicial to the rights of the appellant and may reverse XXXXXXXX thereon, even though no lawful objection or exception was made thereto. [citations omitted]. Our review XXXXXXXX is not limited to the matters brought to our attention in brief of counsel." 395 U.S. at 241-XX242 (citing Duncan v. State, 278 Ala. 145, 157, 176 So 2d 840, 851).

It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary. 395 U.S. at 242.

A plea of guilty is more than a confession swhich admits that the accused did various acts; it is itself a conviction; nothing remains but to give judge ment and determine punishment. See Kercheval v. United States, 274 U.S. 220, X 223, 71 L.Ed. 1009, 112, 47 S.Ct. 582. Admissibility of a confession must be based on a "reliable determination on the voluntariness issue which satisfies the constitutional rights of the defendant." Jackson v. Denno, 378 U.S. 368, X 387, 12 L.Ed. 2de 908, 922, 84 S.Ct. 1774, 1 ALR 3d 1205. The requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation. In XXXXXXX Carnley v. Cochran, 369 U.S. 506, 516, 8 L.Ed. 2d 70, 77, 82 S.Ct. 884, the Supreme Court dealt with a problem of waixe waixexxwaiver of the right to counsel, a Sixth Amendment right, and held,

"Presuming waiver from a silent record is impermissible. The record must show or there must be an allegation and evidence which show[s] that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver."

The Boykin Court stated "the same standard must be applied to determining whether a guilty plea is voluntarily made." 395 U.S. at 242.

36

"Ignorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover-up of unconstitutionality." Id. XXX 242-243. The question of an effective waiver of a federal constitutional right in a proceedings is of course governed by federal standards. XXXXXXX Douglas v Alabama, 380 U.S. 415, 422, 13 L.Ed. 2d 934, 938, 85 S.Ct. 1074.

Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal traial. First is the privelege against compulsory self-incrimination guaranteed by the Fifth Amendment and applicable to the states by reason of the Fourteenth. Malloy v. Hogan, 378 U.S. 1, 12 L.Ed. 2d 653, 84 S.Ct. 1489. Second, is the right to th trial by jury. Duncan v. Louisiana, 391 U.S. 145, 20 L.Ed. 2d 491, 88 S.Ct. 1444. Thied, is the right to confront one's accusers. RXXXXX Pointer v. Texas, 380 U.S. 400, 13 L.Ed. 2d 923, 85 S.Ct. 1065. "We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243.

What is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences. Id. at 243-244.

When the judge discharges that function, he leaves a record adequate for any review that may be later sought (Garner v. Louisiana, 368 U.S. 157, 173, 7 L.Ed. 2d 207, 219, 82 S.Ct. 248; Specht v. Patterson, 386 U.S. 605, 610, 18 L.Ed. 2d 326, 330, 87 S.Ct. 1209), and forestalls the spin-off of collateral proceedings that seek to probe murky memories. Id.

As can likewise be demonstrated by the record in the instant case, the three dissenting justices in the Alabama Supreme Court, for which the United States Supreme Court was concurring, stated the law accurately when they concluded that there was reversible error "because the record does not disclose that the defendant voluntarily and understandingly entered his plea[] of guilty." Boykin, 395 U.S. at 244 (citing 281 Ala. at 663, 207 So 2d at 415.

INEFFECTIVE ASSISTANCE OF COUNSEL AS COUNSEL PROVIDED INCORRECT
LEGAL ADVICE WHICH LEAD USSERY TO BELIEVE AN ACQUITTAL WOULD RESULT
(Ground 20)

Counsel's advice lead Ussery to believe an acquittal would result from a
favorable verdict on the defensive issue of date/limitations. See State habeas
Appendix A-6. The Respondent asserted that Ussery fails to present clear and
convincing evidence to overcome the presumption in favor of the TCCA's impl-
icit factual finding that Cornelius did not mislead Ussery. See Respondent's
Answer p.47 (citing Self, 973 F.2d at 1214). Ussery attached counsel's letter
which included the advice provided to petitioner stating that establishing the
date issue would prove "No Crime Committed At All"(App. A-6). Additionally,
counsel also provided this letter in his habeas response in state habeas pro-
ceediongs.

The allegations asserted by the XXXX alleged victim also ONLY comported
with a date of January 27, 2008 or later. (See Facts Supporting Ground 5);
see also State's own summary of case in closing arguments: "She remembers she
was 3 or 4 and so that's why we put in the indictment her 3rd birthday. Janu-
ary 2008 because that's when she last remembers the proximate time that this
happened. But she was very firm on that. I was 3 or 4. I was able to walk and
talk." (RR V7 p.44-)45).

Furthermore, when counsel had objected to charged offense and impossibil-
ity of date allegations, the state also responded to counsel's objections,
that its theory would be that it would PROVE the defendant MET the mother of
the alleged victim in 2008. (See letters App. A-1, A-6, A-8).State also insis-
ted it was prosecuting the charged offense of "Aggravated Sexual Assault of a
Child Under Six" as a "different offense." (RR V2 p.44).

As no allegations comported with an offense date PRIOR to January 27,
2008 (and certainly not prior to Sept. 1, 2007), and no such evidence supporte
ed such time frame. The offense defendant was put on trial for was enacted
Sept. 1, 2007. See Tex. P.C. 22.021(f)(1). see Acts 2007 80th Leg. ch. 593.
Because the statutes were only applicable to offenses on or after Sept. 1,
2007, and any advice from counsel that a favorable verdict on the Special
Issue would produce an acquittal---is also sound in its interpretation and
cannot be said to be improbable or implausible.

Contrary to state Respondent's assertion that Ussery has not presented
HOW his defense would have been different: 1st, had Ussery began trial on the
offense under Tex. P.C. 22.021 which existed PRIOR to Sept. 1, 2007, then the
defense would not have been restricted by TEx. CCP 37.07 and 37.071 to rais-
ing the defense surrounding date allegations to the sentencing phgase;

instead of said defense being presented in the sentencing phase as a mitig-
ating factor, the defense could have presented this in the guilt phase as a
defensive issue; This notion ALONE, when considered with the jury's verdict on
the SPecial Issue, would have produced an entirely different result. See
Special Issue verdict RR V10 p.107; and 2nd, Ussery would have presented a
defense for prior to Sept. 1, 2007, such as calling on other WXKMM witnesses
who lived in the house with defendant and mother of alleged victim in 2007.
(See RR V6 p.63--Where Martha Burton testified that a friend, his wife, and
kids lived in the house with them four or five months); calling on these
witnesses would have confirmed Ussery never watched the children in 2007.
The reasonable doubt of the jury eliminated any date range on or after Sept.
1, 2007, and no other evidence remained to support an offense for PRIORM to
Sept. 1, 2007. See Special Issue verdict RR V10 p.107. But for counsel's
failure to present this defense in the guilt phase, the presentation of the
defense in proceedings would have changed the outcome of the trial.

### LEGAL ARGUMENT

As for controlling authority, Ussery cites Deluca v. Lord, 77 F.3d 578
(2d Cir.1996) which reversed a conviction due to counsel's inadequate advice
on a defensive issue because there was a reasonable probability that the
defense, if presented, would have changed the outcome of the trial.

In finding counsel & ineffective for inadequate advice on a defensive
issue in DeLuca, the trial judge found it likely [the defendant] himself had
not properly understood the defense." DeLuca, 77 F.3d at 586, and found the
defendant provided the necessary corroborating evidence to support such a
finding. See Id. at 587. In contrast to the findings in DeLuca where counsel
was found to prematurely reject a defense, the petitioner is asserting that
counsel's advice and course of action in the instant case was controlled by
the representations made by the State and KXXXMKXMX statutory law or guidelin-
es. See Tex.P.C. 22.021(f)(1), CCP 37.07; and Gov't Code 508.145.

Had the State held itslef to its insistence that it was prosecuting a
"different offense," then its burden would have been held to prove ENTIRELYW
the charged offense of "Aggravated Sexual Assault of a Child Under Six," be-
cause this was the stated intent andHM the only charged offense submitted in
the guilt phase of trial. See Granger v. State, 850 S.W. 2d 513 at 520 (It
appears that the state simply chose not to pursue KMXXXXKXMXX a conviciton
for that [lesser] offense, although the [defendant] was in jeopardy as to
that offense. Had it so elected, the State could have requested the addition-
al instruction [on the lesser] offense. The trial was then adopted by the space without [less-

39

al instruction [on the lesser] offense.Therefore, with respect to the
[lesser] offense..., the trial was abandoned or aborted by the state without
manifest necessity.). However, insterad, defense counsels presentation of the
Special Issue in them sentencing phase (as required by Tex. CCP 37.07) shifted
the burden to the defendant after the fact rather than resulting in acquittal,
somehow allowed the state to change its position to an uncharged offense;
Counsel had originally requested a directed or instructed verdict--or in-
structions from the court in how to proceed. (RR V10 p.82-83). Had he re-urged
this position. noting State's asserted intent of prosecuting the charged off-
ense as a "different offense " and the inability to present Special Issue def-
dnse in the guilt+ phase. then the only course of action for the court would
have been to direct a verdict for acquittal.

[A] Deficient Performance/Strategy

The defendant must overcome the presumption that. under the circumstances
the challenged action "might be considered sound trial strategy " Strickland,
466 U.S. at 689 (quotingMichel v. Louisiana, 350 U.S. 91, 101 (1955). Thiss
was not a scenario where counsel made strategic choices to forgo the date lim-
itations as an acquittal; indeed, counsel requested a directed verdict or
instructions from the court in how to proceed. (RR V10 p.83). However, he
was required by the court to proceed and argue the SPecial Issue as if it XXX
only affected sentencing, and counsel was prevented from presenting the def-
ense as a defensive issue XXX in the guilt phase by the State's insistence on
the charged offense as its own offense and the statutes applicableto P.C.
22.021(f)(1).See also Tex. CCP 37.07.

In order to demonstrate claim for ineffective assistance of counsel, a
defendant must establish that his counsel's errors prejudiced the outcome of
the procedures against him. Strickland, 466 U.S. at 686. A reasonable probab-
ility is a probability sufficient to undermine confidence in the outcome, how-
ever it is a less demanding standard than more likely than not. Id. a 693-
694. The issue becomes whether counsel;'s performance was so manifestly
ia ineffective that defeat was snatched from the hands of a probable victory."
See United States v. Morrow, 977 F.2d 222, 229 (6th Cir.1992).

Alternatively, where this court disagrees with any contention, then
"(counsel) simply failed to make the effort[]...therefore, did not choose,
strategically or otherwise [as his decision was made by the court and/or
statute] to pursue one line of defense over another. Instead, (he) simply
abdicated [or was forced to abdicate] his client's cause.' Nealy, 764 F.2d
at 1173 (reversing a murder conviction due to counsel's failure to investi-
gate alibi defense-); Bryant v. XXXX Scott. 28 F.3d 1411 (failure to invest-

40

igate alibi defense not a strategic choice but an abdication of responsibility); Profitt v. Waldron. 831 F.2d 1245 (no strategic justification for abandoning insanity defense).

[B] Prejudice

The test for prejudice aunder Strickland is whether there is a "reasonable probability that. but for counsel's unprofessional errors. the results of the proceeding would have been different." Id. 466 U.S. at 694.

A defendant need not show that the attorney's mistakes altered the outcome of the trial.Rather. the 'reasonable probability'is a "reasonable probability sufficient to undermine confidence in the outcome." Id. 466 U.S. at 688..

Numerous courts have granted relief for ineffective assistance of counsel on the basis of counsel's failure to investigate and prepare viable theories of defense. Nealy. supra (alibi); Profitt. supra (insanity defense); DeLuca v. Lord. 77 F.3d 578 (2nd Cir.1996). cert. denied. 519 U.S. 824. 136 L.Ed. 2d 40. 117 S.Ct. 83 (1996) (extreme emotional disturbance); U.S. v. Gray. 878 F.2d 702 (3rd Cir.1989) (self defense); Griffin v.Warden. 970 F.2d 1355 (4th Cir.1992)(alibi); Harris v. Reed. 894 F.2d 871 (7th Cir.1990)(eyewitness); Montgomery v. Petersen. 846 F.2d 407 (7th Cir.1988)(alibi).

The "deficient performance" prong is easily met here. An attorney's failure to present available exculpatory evidence is ordinarily deficient, "unless some cogent tactical or other consideration justified it." Washington v. Murray, 952 F.2d 1472, 1476 (4th Cir.1991). Accord, Lawrence v. Armtrout, 900 F.2d 127, 130 (8th Cir.1990), appeal after remand 961 F.2d 113 (8th Cir. 1992)(failure to interview alibi witness was deficient performance under first Strickland factor).

Because effectiveness of counsel is a mixed question of law and fact, we owe no special deference to the finding of the state court on the questiopn. Strickland v. Washington, 466 U.S. at 698.

It is difficuklt to imagine that a fair presentation of this Special Issue and reasonable doubt instruction in the guilt phase would not have changed the outcome in  the guilt phase; The Special Issue shows there was reasonable doubt on ƊK or after Sept. 1, 2007 and no evidence otherwise supported an offense PRIOR to Sept. 1, 2007, had counsel insisted on the advised defense the outcome of the ƍverdict most certainly would have been different based on the Special Issue verdict. (See RR V10 p 107). Accordingly, the TCCA's denial was an unreasonable applicaiton of the Strickland standard therefore is contrary to current Supreme Court precedent and clearly established federal law. See Williams v. Taylor. 529 U.S. at 406. 120 S.Ct. at 1519-20.

41

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL FOR FAILURE TO RAISE
CHARGE ERROR AND DATE FACT ISSUE AS ACQUITTAL
(Ground 21)

Trial Counsel objected to charged offense. (See State habeas Appendix A-6 also RR V2 p43); State ELECTED to greater offense language of 'Child Under Six' as a 'different offense'. (RR V2 p44); This is the elephant in the room as NO alternative language was submitted to the jury. State insisted it would PROVe a theory that defendant met mother of alleged victim in 2008 (See App. A-6). Theory of alleged offense's date was January 27, 2008 or later. (See Indictment); Offense charged was enacted Sept. 1, 2007. See Acts 2007, 80th Leg. ch.593. Jury's verdict on the Special Issue was unanimous that the State DID NOT prove beyond a reasonable doubt that defendant committed alleged offense on or after Sept. 1, 2007. (RR V10 p107). Respondent in Answer now decides the language of the offense to be different "Aggravated Sexual Assault of a Child Under 14". *(Resp. Answer p.61)* Thus, verdict reached should have been acquittal and the resulting sentence to statutory guidelines and offense for PRIOR to Sept. 1, 2007 was in violation of Double Jeopardy, and aside from being rendered a result of a constructive amendment, was also the result of faulty reasonable doubt instructions. Appellant raised issues with appellate counsel demanding they be raised, yet counsel failed to do so. Respondent acknowledged that Ussery showed evidence he raised nonfrivolous issues with appellate counsel who failed to raise them. (See Resp. Answer p10-11). In failure to raise these issues, counsel has denied effective representation and denied fair preservation of issues that were available for appeal.

## LEGAL ARGUMENT

The right to counsel on Direct Appeal is guaranteed by the 6th Amendment to the U.S. Constitution made applicable to the State's by the Fourteenth. The Sixth Amendment right extends to the first appeal as of right. Evitts v. Lucey, 469 U.S. 387, 83 L.Ed. 2d 821 (1985).

The standard by which to measure counsels performance is established by Strickland v.Washington, 466 U.S. 668, 695, 80 L.Ed. 2d 674 (1984)(claims of ineffectiveness are governed by Strickland's general requirement that (1) Counsel's perfvormance be deficient, and (2) there is a reasonable probability that but for the ~~attorney's~~ attorney's error the outcome of the proceeding would have been different; and in assessing whether counsels performance prejudiced a defendant [or appellant], "any amount of actual jail time has 6th Amendment significance." Glover v. United States, 531 U.S. 198, 203, 148 L.Ed. 2d 604 (2001).

As outlined, this argument could have been presented in three different contexts: (1) constructive amendment ;(2) Double Jeopardy; (3) a faulty

reasonable doubt instruction, any of which can show the result of the jury's verdict on the Special Issue was indeed an acquittal.

## A. Constructive Amendment

It is generally sufficient for an indictment to set forth [or charge] the offense in the words of the statute itself as long as "those words of themselves fully, directly and expressly, without any uncertainty or ambiguity set forth all the elements necessary to constitute the offense intended to be punished." Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed. 2d 590 (1974)(citing United States v. Carll, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). Failure to allege the statutory elements will not be fatal PROVIDED THAT ALTERNATIVE LANGUAGE IS USED oix that the essential elements are charged in the indictment by implication. United States v. Ratcliff, 488 F.3d 639, 643 (5th Cir.2007). The sufficiency of an indictment may be challenged ss not only on the basis that it fails to charge the essential elements of the statutory offense, but also on the ground that the specific facts alleged fall beyond the scope of the relevant criminal statute, as a matter of statutory ssxxuxconstruction and interpretation. See United States v. McGeehan, 584 F.3d 560, 564-565 (3d Cir.2009).

The most troublesome questions arise in determining whether particular facts are "essential" and required to be pleaded, if they are not specified in the statute creating the offense. See Alleyne v. United States, 570 U.S. 99. Traditionally, penalty provisions that permitted enhanced sentencing for certain crimes were not considered to add an "element" to an offense. United States v. Thompson, 454 F.3d 459, 467 (5th Cir.2006); see McMillan v. Pennsylvania, 477 U.S. 79 (1989).

This longstanding precedent changed with the Supreme Court decision in Jones v.United States, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed. 2d 311 (1999), in which the Court held that provisions of the federal carjacking statute that established higher penalties to be imposed when the underlying offense resulted in serious injury or death were elements of distinct offenses under the statute and not merely sentencing enhancements. As a result, the Court determined that these elements must be plead in the indictment and proved at trial beyond a reasonable doubt in order for the enhanced sentences to be applied to a convicted defendant.

Then in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed. 2d 435 (2000), the Court ruled that the protections of the Constitution require that a jury must decide any fact that would serve to increase a sentence above the statutory maximum by a standard of proof beyond a reasonable doubt.

43

The government must charge these facts in the indictment as well. See, e.g., United States v. Salazar-Lopez, 506 F.3d 748 (9th Cir.2007).

More recently in Alleyne v. United States, 570 U.S. 99 (2013) the Supreme Court decided there was no reason to distinguish a fact element which increased the mandatory minimum from a fact issue that increased the statutory maximum penalty for an offense and specified that such fact issue was an element of the offense. Thus Alleyne extended the principle of Apprendi to mandatory minimums.

Only a grand jury can amend an indictment to broaden it; and such broadening need not be explicit to constitute reversible error, but may be implicit or constructive. See United States v. Doucet, 994 F.2d 169, 172 (5th Cir. 1993). An implicit or constructive amendment of the indictment constituting reversible error occurs when it permits the defendant to be convicted upon a factual basis THAT EFFECTIVELY MODIFIES AN ESSENTIAL ELEMENT of the charge OR PERMITS THE GOVERNMENT TO CONVICT THE DEFENDANT ON A MATERIALLY DIFFERENT THEORY OR SET OF FACTS than that which she is charged. See Chambers, 408 F.3d 237, 2005 WL 995671 (5th Cir.2005).

The appellate courts attempt to adopt a different offense identified by different language to define that offense demonstrates the insufficiency as well. See Johnson v. State, 364 S.W. 292, 298-99 (2012)("a variance involving statutory language that defines the offense always renders the evidence legally insufficient to support the conviction".Such varianceare always material)). See Ground 12; See also Ground 1.

### B. Double Jeopardy Violation

Because the jury found unanimously that the greater offense sought in the indictment was not committed on or after Sept. 1, 2007, by re-assigning the offense to a lesser-included offense that was not presented to the jury but also rested on the issue of date (for PRIOR to Sept. 1, 2007), the Court violates Double Jeopardy. State law must conform to principles of justice (a state law or practice that betrays a fundamental principle of justice offends the Due PRocess Clause. Cooper v. Oklahoma, 517 U.S. 348, 363-65, 116 S.CT. 1373, 134 L.ED. 2d 498 (1996).

"[I]t has long been settled under the Fifth Amendment that a verdict of acquittal is final, ending a defendant's jeopardy. and...is a bar to a subsequent prosecution for the same offense." Green v. United States, 355 U.S. 184, 188, 78 S.CT. 221, 2 L.Ed. 2d 199. 77 Ohio Law Abs. 202 (1957). An acquittal is an acquittal, even "when a jury returns inconsistent verdicts, convicting one one count and acquitting on another count where both counts turn on the

very same issue of ultimate fact." Bravo-Fernandez v.United States XXX, 580
U.S. 5, 8, 137 S.Ct. 352, 196 L.Ed. 2d 242. See Ground 2.

### C. Faulty Reasonable Doubt Instructions

Under the Due Process Clause of the Fifth Amendment, the prosecution is
required to prove beyond a reasonable doubt every element of the crime with
which a defendant is charged. In rea Winship, 397 U.S. 358, 364 (1970); See
also United States v.O'Brien, 130 S.Ct. 2169, 2174 (2010)(distinguishing be-
tween elements of a crime that must be charged in an indictment and proved to
a judge at sentencing by a preponderance ofX the evidence)(enhancement ele-
ments). Thus, a state may not distinguish between similar offenses that have
different maximum penalties without requiring XXXX the prosecution to prove
beyond a reasonable doubt the facts that distinguish the two offenses. See
Apprendi v. New Jersey, 530 U.S. 466, 488-492 (2000).

The facts in this case Xclearly demonstrate that the jury DID find unanim
ously beyond a reasonable doubt that the State DID NOT prove an offense was
committed on or after Sept. 1, 2007; however, the jury did not clearly find
the converse of that: the jury DID NOT find beyond a reasonable doubt that an
offense was committed PRIOR to Sept. 1, 2007, thus the instruction error is
clear and obvious. See Special Issue verdict RR V10 p107). This requißed an
acquittal. See U.S.v. Bonner, 648 F.3d 209, 214 (4th Cir.2011)(prosecutions
failure to prove beyond a reasonable doubt that defendant was linked to the
robbery when identity was in dispute required acquittal). Ussery's identity
was not only being challenged (as mistaqken identity), but more soll opport-
unity was being challenged based on the date.

The giving of a constitutionally deficient reasonable doubt instruction
is among those constitutional errorsthat require reversal of a conviction,
rather than those that are amenable to harmless-error analysis. See Chapman
v. California, 386 U.S. 18, 24, 17 L.Ed. 2d 705, 87 S.Ct. 824, 24 ALR3d 1065;
see also Sullivan v. Louisiana, 508 U.S. 275 (1993); Cage v. Louisiana, 498
U.S. 39, 112 L.Ed. 2d 339,111 S.Ct. 328. SeeX Ground 1.

"[A] lawyer who fails adequately to investigate and introduce evidence
that demonstratesx his clients factual innocence or that raises sufficient
doubt as to that question to undermine confidence in the verdict, renders
deficient performance." Duncan v. Omoski, 528 F.3d 1222, 1234 (9th Cir.2008)
(quoting Hart v. Gomez, 174 F.3d 1067, 1070 (9thCir.1999). Attorney error
that constitutes ineffective assistance of counsel is cause to set aside a
procedural default. Franklin v. Gilmore, 188 F.3d 87 (7th Cir.1999). Although
no procedural default was declared by the Respondent on this issue,

To demonstrate deficiency, Ussery must show that, but for counsel's deficient performance, "he would have prevailed on appeal." Smith v. Robbins, 528 U.S. 259, 286 (2000). Ussery has shown in at least three different ways related to charge error that "[t]here is a reasonable probability that, but for counsel's unprofessional errors, the result of the [appeal] would have been different."Sharp v.Puckett, 930 F.2d 450, 453 (5th Cir.1991).

If this court believes any procedural defaulkt to exist in review to any of the underlying claims then cause to excuse can also be shown if counsel on appeal "forwent a meritorious claim against the known wishes of his client." See, e.g., Clay v.director, 749 F.2d 427, 430-32 (7th Cir.1984), cert. denied, 471 U.S. 1108 (1985).

TRIAL COUNSEL FAILED TO REQUEST EXPERT WITNESS: CAUSE TO EXCUSE DEFAULT
DUE TO STATE'S BRADY VIOLATION, IAC APPELLATE COUNSEL & IAC PCW COUNSEL
(Ground 24)

Respondent has asserted this claim to be unexhausted and thus procedurally barred. The underlying issue in this claim serves to be both an element to the claim and the criteria for guaging prejudice for the "cause andprejudice" exception to the procedural default doctrine.(i.e., the materiality element of a Brady claim of unconstitutional suppression of evidence by the prosecution). This point is well illustrated by considering the diametrically opposed outcome of the prejudice analysis in two Supreme Court cases that involved somewhat similar fact patterns: Strickler v. Greene, 527 U.S. 263 (1999) and Banks v.Dretke, 540 U.S. 668 (2004). In both cases the habeas corpus petitioner challenged prosecutorial suppression of the evidence arguing that the prosecutors actions satisfied the elements of a due process claim under Brady v. Maryland, 373 U.S. 83 (1963) and also supplied "cause" for the default of failing to raise the claim at trial level, on appeal, and in state post-conviction proceedings, in that the prosecutor had prevented the defense from acquiring the information necessary to identify and pleads the claim. In both cases, the Supreme Court found that the prosecutions withholding of exculpatory evidence despite a prosecutorial commitment to disclose ALL Brady material upon which the defense reasonably relied---amply satisfied both the Brady doctrines substantive element of suppression of evidence and the procedural default doctrines cause requirement. See Banks at 691; Strickler at 289.

Both Cause and Prejudice must be shown to excuse a procedural default and permit relief on a defaulted claim. Nonetheless, a strong showing on one prong of the test may go a long way towards establishing the other prong. For instance, a strong showing that a state official intentionally took steps to impede the petitioner from raising a claim not only establishes case, see Murray v. Carrier, 477 U.S. at 488, but also suggests that the offending State official felt the issue was outcome-determinative, hence that the error obscured by the State was prejudicial. In general that it, the more substantially the and trial proceedings deviated from established standards, the more likely the petitioner was harmed.See, e.g., Amadeo v. Kemp., 816 F.2d 1502 (11th Cir.), arev'd on other grounds, 486 U.S. 214 (1988).Likewise, if a petitioner can demonstrate particularly grievous harm flowing from an error, the reviewing court may be more likely to find that the showing of cause is adequate. See Huffman v. Wainwright, 651 F.2d 347, 351 (5th Cir.1981)(reviwing court accordingly may "view cause...with an eye to the possible resulting prejudice");See also Bridge v. Lynaugh, 856 F.2d 712, 714 (5th Cir.1988)(proceduralRdefault

overcome in part by "highly prejudicial" quality of petitioner's claim).

Ultimately, any procedural default can be excused due to actions of the State¹ State courts, or other officials who hindered compliance with the procedural rule or made complaince "impracticable". See Banks v. Dretke, 540 U.S. 668, 691 (2004). See Ground 32--forced counsel for post conviction writ.

Additionally, Respondent concedes Ussery did request his appellate counsel XXX to raise claim that trial counsel hired no expert witness to create doubt as to the child victim's outcry. See Respondent's Answer p.10-11. Cause and prejudice exists if appellate counsel forwent a meritorious claim against the known wishes of the client. See, e.g., Clay v. Director, 749 F.2d 427, 430-32 (7th Cir.1984), cert denied, 471 U.S. 1108 (1985); See also Smith v. Carolina, 882 F.2d 895, 898 (4th Cir.1989), cert. denied, 493 U.S. 1046 XX (1990); Clemons v. XXXDelo, 100 F.3d 1394, 1398-99 (8th Cir.1996).

Even if the state courts have made a record on the genesis and effect of an alleged default, a hearing still may be required because cause and prejudice are "federal question[s]" on which the federal courts have a duty to make "an independent determination." In re Kravitz, 488 F.Supp. 38, 47 (M.D.Pa 1979) Accord Johnson v.Mississippi, 486 U.S. 578, 587 (1988); Murray v. Carrier, 477 U.S. at 489 ("question whether there is cause for procedural default does not pose any occassion for applying the exhaustion doctrine when the federal habeas court can adjudicate the question of cause--a question of federal law-- without deciding an independent unexhausted XXXXX constitutional claim on the meritsX"); Williams v. Lane, 826 F.2d 654, 660 (7th Cir.1987)(federal court is not bound by state court findings of procedural default, quoting Smith v. Digmon, 434 U.S. 332 (1978). Thus, de novo review is requested, and a hearing if necessary to establish facts showing exhaustion or cause.

Case Specific Legal Argument

Petitioner adopts and incorporates by reference facts listed in Grounds 26, 27, and 28 (identical facts for each ground), XXXXXXXXXXXXXX for State habeas application, incorporate by reference Grounds 24-26 in federal habeas application; Please note that State habeas grounds 26-28 on the second page of each facts summary lists petitioner's complaint that his counsel was unable to call upon an expert witness to rebut the surprise testimony of the alleged victim. It is this claim that petitioner is expanding on in federal habeas.

Courts have found the "ends of justice" to be satisfied when a petitioner presents additional allegations in support of the same legal claim made on [post-conviction writ/appeal], when he presents the same allegation but improves his constitutional analysis, and XXXX when the court was simply wrong

48

the first time around. In re Brett, 142 Wn. 2d 868, 16 P.3d 601 (2001), the Supreme Court of Wisconsin found trial counsel ineffective in failing to present expert testimony concerning the defendant's medical and mental conditions. Brett had previously argued on direct appeal that trial counsel was ineffective, and had specifically relied on counsel's failure to explore Brett's fetal alcohol syndrome. Id. Nevertheless, the stronger evidence of ineffectiveness presented in the PRP justified revisiting the issue and granting relief.

In the instant case, Counsel's failure to consult any child psychology expert constituted a threefold abrogation of his duty under Strickland v. Washington, 466 U.S. 668 (1984). Counsel first failed in his inadequate investigation prior to settling on a trial strategy; his second failure lay in failing to conduct the necessary investigation before trial to determie what child psychology evidence might be available to introduce (or prior statement) or how expert testimony might support the theory he had chosen; and his third, in failing to consult experts who could assist during trial when the state foreseeably introduced expert testimopny regarding the child's outcry. See Richter v.Hickman, 578 F.3d 944 (not calling forensic expert for defense). Counsel's deficiency is demonstrated because "an uninformed strategy is not a reasoned strategy." Correll v. Ryan, 539 F.3d 938, 949 (9th Cir. 2008).

Testimony of an expert could have revealed the potential for "transference", mis-identification, or fabrication of the outcry; Thus, counsel's failure to secure child psychology expert denied the presentation of a defense to the only witness' testimony who mattered. "Due process includes a right to a meaningful opportunity to present a complete defense." Crane v. Kentucky, 106 S.Ct. 2142 (1984).

Brady Violation and PCW Counsel As Cause To Excuse Default

In the instant case, petitioner has shown he can overcome any unexhaustio or procedural bar due to prior arguments, State's Brady violation, and Counsel's ineffectiveness on post-conviciton writ proceedings.

The suppression of evidence favorable to an accused after a request violates due process where the evidence is material either too guilt or punishment' irrespective of the good faith or bad faith of the prosecution. See Brady v. Maryland, 373 U.S. 83, 87 (1963). To establish a Brady violation, the petitioner must prove (1) the prosecutor suppressed or withheld evidence; (2) that was favorable; and (3) material to the defense. See Moore v. Illinois, 408 U.S. 786, 794-95 (1972); Ogle v. Estelle, 641 F.2d 1122, 1124 (5th Cir.1981). In Gaskin v. State, 172 Tex.Cr.R. 7, 353 S.W. 2d 467, 469 (1961),

the Texas Court of Criminal Appeals held as a matter of state procedural law
that if a prosecution witness has made a prior statement to agents of the ~~stat~~
state, the defense, on request, is entitled prior to cross-examination to view
the statement, regardless of whether the statement is used by the witness to
refresh his memory or whether it is exculpatory in nature.

Martha, the mother of the alleged victim testified the child made an
outcry spontaneously when her daughter was eating a popscicle. (RR V6 p47);
However, the child ~~XXXXXX~~complainant testified her outcry was prompted by a
child ~~XXXXXX~~friend who alleged the same type of (exact) assault to have occ-
urred on him. (RR V6 p173). Defense counsel clarified that the child had told
this version of the outcry to state agents. (RR V6 p171-171;185). Martha's
testimony was first approved in a Art. 38.072 hearing and thus, the statement
could have been used to impeacvh her false testimony as well. See Ground 25-
26, federal writ application. A child psychology expert may have revealed this
information or statement was actually exculpatory in nature.

The Supreme Court explained in United States v. Agursa, 427 U.S. 97, 104
(1976): "A fair analysis of the holding in Brady indicates that implicit in
the requirement of materiality is a concern that the suppressed evidence might
have affected the outcome of the trial." The evidence is material only if
there is a reasonable probability that, had the evidence been disclosed to the
defense, the result of the proceeding would have been different. See United
States v. Bagley, 473 U.S. 667, 684 (1985). A"reasonable probability" is a
probability sufficient to undermine confidence in the outcome of the trial.
Id. at 678, 684.

Impeachment evidence, as well as exculpatory evidence falls within the
Brady Rule. See Giglio v. united States, 405 U.S. 150, 154 (1972). Such evid-
ence is "evidence favorable to an accused," Brady, 373 U.S. at 87, so that if
disclosed and used effectively, it may make the difference between conviction
and acquittal.Cf. Napue v.Ø Illinois, 360 U.S. ~~XXXX~~ 264, 269 (1959)("The jurys
estimate of the truthfulness and reliability of a given witness may ~~makexthex~~
~~differenxe~~ well be determinative of guilt or innocence and it is upon such
subtle factors as the possible interest of the witness in testifying falsely
that a defendant's life or liberty may demand").

The materiality of this exculpatory statement of the alleged victim is
demonstrated in: (1) the lack of evidence supporting defendant committed the
alleged offense; (2) the likelihood of "transference" or misidentification;
(3) inability to impeach Martha, an impact which likely allowed Martha's
~~testimony~~ testimony which would otherwise have not been allowabkle (seeGround 25-26);

and subtle influences into the trial which cannot readily be identifiable. "A finding of materiality of the evidence is required under Brady... A new trial is required if the false testimony could...in any reasonable likelihood have affected the judgement of the jury..."Giglio, 405 U.S. at 154.

Cause for a procedural default exists, "where something external to the petitioner, something that cannot fairly be attributed to him[,]...impeded [his] efforts to comply with the state procedural rule."Coleman, 501 U.S. at 753, 111 S.Ct. 2546, 115 L.Ed. 2d 640 (quoting Murray v.Carrier, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed. 2d 397 (1986). Ussery has shown with Grounds 31-34, federal writ, that the state court FORCED PCW counsel on Ussery.

In Martinez v. Ryan, the Supreme Court ruled that ineffective assistance of post-conviction counsel may serve as cause with respect to a claim of ineffective assistance of trial counsel for purposes off overcoming the procedural default. The Court in Martinez stated:

"Where under state law, claims of ineffective assistance of trial counsel must be raised in an initial review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel, if in the initial review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective ive." 566 U.S. 1, 17, 132 S.Ct. 1309, 182 L.Ed. 2d 272 (2012); In Trevino v. Thaler, 569 U.S. 413, 423, 133 S.Ct. 1911, 185 L.Ed. 2d 1044 (2013), the Court extended the principle of Martinez to proceedings such as Texas, where the State procedural design or practice and implimentation make it impracticable for IAC of trial counsel claims.

Thus, state trial courts forcing counsel for PCW on Ussery, and said counsel's ineffectiveness should qualify as any additional cause to excuse any procedural default, where any other showing of cause does not satisfy this court. Prejudice is shown because petitioner cannot now go back and raise this issue if this court does not find adequate the petitioner's showing of cause to excuse any default.

INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN FAILURE TO RAISE
IMPROPER OUTCRY WITNESS, SURPRISE TESTIMONY OF ALLEGED VICTIM AND OUTCRY
WITNESS, AND DENIAL OF RIGHT TO CALL WITNESS ALL IN DENIAL OF DUE PROCESS
(Fed.Writ Grounds 25-26)

State's witness Burton's recorded statement originally stated another
child's mother reported outcry to Ms. Burton, alleged victim's mother. (See
SX-1; RR V6 p53). State's Notice ALSO stated Burton learned of the outcry
from another child's mother. (DX-1; RR V6 p.39-40). However, in trial, state
presented Burton as the outcry witness, to which defense objected based on
notice. (RR V6 p.35-36). Burton testified the child's outcry was prompted by
sucking on a popsicle, (RR V6 p47), which was provided in state's Notice, how
ever, the child complainant surprised the defense by stating her outcry was
prompted by another child's allegation of sexual assault. (RR V6 p.173). It
was this other childs mother who was originally noticed to the defense as the
proper outcry witness, a witness the defense requested to call on but the
state did not make available at trial. (RR V6 p.39-40).

LEGAL ARGUMENT

Tex. CCP 38.072 allows hearsay evidence to be admitted by a proper
'outcry witness' who was the first person 18 years of age or older, whom a
child first makes a "statement about the offense." See Sec. 2(a). However,
even this can only be accomplished by a proper notice being provided by the
state. See Sec. 2(b).

In enacting the "first person" requirement, the legislature was "trying
to strike a balance between the general prohibition against hearsay and the
specific societal desire to curb the sexual abuse of children." See generally
Osborne v. Ohio, 110 S.Ct. 1691, 109 L.Ed. 2d 98 (1990)(cited and quoted in
Garcia v. State, 792 S.W. 2d 88 (Tex.Crim.App.1990).

Defense counsel's clear objections during the 38.072 hearing, outside the
presence of the jury, was to improper notice & objected to Ms. Burton as the
outcry witness as the defense had prepared to examine "Nassim's" mother, (See
RR V6 p40), as this was in accord with state's notice.

Tex.R.Evid. 103(b) provides that "[w]hen the court hears a party's object
ions outside the presence of the jury and rules that evidence is admissible, a
party need not renew an objection to preserve a claim for error for appeal."
TRE 103(b); see also Lopez v. State, 253 S.W. 3d 680, 684 (Tex.Crim.App.2008)
(holding that to preserve error "an objection must be made each time inadmiss-
ible evidence is offered unless the complaining party obtains a running object
ion or obtains a ruling on his complaint in a hearing outside the presence of
the jury"). Therefore, these objections were properly raised and the errors
preserved for appeal.

52

Even though the child's outcry "must be more than words which give a general allusion that something in the area of child abuse was going on," Garcia, 792 S.W. 2d at 91, the "specificity requirement is generally met where a victim sufficiently describes the how, when, and where of the abuse." Kappes v. State, 2023 Tex.App. LEXIS 899, 2023 WL 1972015, at *5.

The defendant was denied an opportunity to cross-examine the originally noticed outcry witness---a necessary witness because the defense theory in part was one of mistaken identity. See Defense Counsel Closing Argument. It is possible the original outcry may have been drastically different than the one relayed by Burton. This is demonstrated by the potentially false testimony of Burton that the outcry was prompted by the child sucking on a popsicle. (RR V6 p.47). Yet, the alleged victim surprised the defense by stating the outcry was prompted by her friend Nassim's (another child) allegation that the exact sex assault had occurred with him (by another adult) and *the alleged victim's response was that happened to "me too." (RR V6 p173). The two children then told Nassim's mother before the other mother relayed this to Ms. Burton. (See DX-1; see also SX-1). These are two very different, distinctly different, out-cry events. This discrepancy also brought in an element of surprise which the defendant could not overcome without proper Brady disclosures and without confrontation of ofher childs mother, because Ms.Burton DID indicate it was 'possible' Nassim's mother was the first adult told of the alleged incident. (RR V6 p.42). Thus, it was critical that the defense be allowed to confront the proper outcry witness.

The Confrontation Clause of the U.S. Constitution guarantees a defendant the right to cross-examine a witness on any subject "reasonably calculated to expose a motive, bias, or interest for the witness to testify." The failure of the state to make available the original outcry witness violated the defend ant's Sixth Amendment right to confront witnesses. The defense requested this witness and the state declared it did not have the witness available. (RR V6 p 39-40). An inference may be drawn from a party's failure to call a witness when where "a party has it peculiarly within its power to produce witnesses whose testimony would elucidate the transaction and fails to produce such witnesses es." United States v. Torres, 845 F.2d 1165, 1169 (2d Cir.1983)(cleaned up) (quoting Graves v. United States, 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1893).

Without this witness' availability, there is no verification that Ussery was in fact the person identified when the complainant made the initial out-cry; Without examining this other mother, it cannot be determined that Ms. Burton was the proper

Burton was the proper outcry witness, and therefore, it was error in admitting Ms. Burton's testimony regarding the complainants outcry (purportedly) made to her. See Brown v. State, 189 S.W. 3d 382, 386-87 (Tex.App.Texarkana 2006, pet. ref'd)(concluding CAC Counselor not proper outcry witness because child complainant had previously described offense in discernable manner to her father and his girlfriend); see also Reed v. State, 974 S.W. 2d 838, 841 (Tex. App. San Antonio 1998, pet.ref'd)(rejecting argument CPS worker was proper outcry witness because complainants statements to him were "more detailed").

The admission of inadmissible hearsay constitutes nonconstitutional error and must be considered harmless if an examination of the record as a whole provides reasonable assurance that the error did not influence the verdict or had but a slight effect. See Tex.R.App.P. 44.2(b); Garcia v. State, 126 S.W. 3d 921, 927 (Tex.Crim.App.2004).In reviewing the record as a whole in Ussery's case the admission of Burton's hearsay must be considered in conjunction with: (1) State's Brady violation in failure to provide impeachment evidence of Burton (the surprise testimony that child's outcry was prompted by another child's allegation)(see Ground 24); (2) State's failure to produce other potentially proper outcry witness who was included in State's Notice; (3) Ms. Burton's potentially false testimony concerning her account of the child's outcry, exposing bias ex post hearing; and (4) surprise to the defendant, including the inability of defendant to have available a child psychology expert concerning child's account of the outcry(see Ground 24)./

Of note is that defense counsel did point out while examining Burton in the hearing that he did not have a way to impeach her testimony. (RR V6 p.36). This was prior to complainants later testimony. During cross-examination of the complainant, it was revealed that the child HAD told State agents that her outcry event was prompted by the sexual assault allegation of another child-- the surprise testimony--and this was never disclosed to the defense, establishing the evidence necessary to support Brady violation claim. (RR V6 p.171-173; p.185).

The Supreme Court explained in United States v. Agurs, 427 U.S. 97, 104 (1976): "A fair analysis of the holding in Brady [v. Maryland, 373 U.S. 83 (1963)] indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." The evidence is material only if there is a reasonable probability that, had the [impeachment] evidence been disclosed to the defense, the result of the proceeding would have been different. See United States v. Bagley, 473 U.S. 667, 684 (1985). A "reasonable probability" is a probability

sufficient to undermine confidence in the outcome of the trial. Id. at 678, XX 684.

Had the defense had knowledge of the child's version of the outcry, then proper impeachment evidence would have been available at the time of the Art. 38.072 hearing where the judge originally determined Ms. Burton to be the proper outcry witness and thus the result of this proceeding may have been different. The availability of the proper outcry witness could have likely provided additional impeachment evidence, and ultimately, Ms.Burton would not have been the XXX outcry witness. (or may not have been).

Impeachment evidence as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154 (1972). Such evidence is "evidence favorable to an accused," Brady, 373 U.S. at 87, so that if disclosed and used effectively, it may make the difference between conviciton and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269 (1959)("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may demand").

The child's version of the outcry clearly shows that Ms. Burton's version of the outcry was false, and if impeached properly, may have changed the outcome of the 38.072 hearing, or changed the jury's view in her credibility. XXX Thus, Ms. Burton may have in fact not been the later outcry witness at all, or in the alternative, the jury could have chosen not to believe ANY of Ms.Burton testimony. The materiality of her inadmissible hearsay is shown in that no evidence supported the allegations made against the defendant.

"A finding of materiality of the evidence is required under Brady...A new trial is required if 'the false testimony could...in any reasonable likelihood have affected the judgement of the jury...'" Giglio, 405 U.S. at 154.

### Standard For Appellate IAC

The Due Process Clause of the Fourteenth Amendment guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v.Lucey, 469 U.S.387 (1985). "The Constitution does not require appellate counsel to raise every nonfrivolous ground that might be raised onXXXX appeal." Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir.), cert. denied, 493 U.S 970, 110 S.Ct. 419, 107 L.Ed. 2d 384 (1989).

In order to prove ineffective assistance of appellate counsel, a petition er must show that the decision not to raise an issue on appeal fell below an X

objective standard of reasonableness. United States v. Phillips, 210 F.3d 345, 348 (5th Cir.2000), citing Strickland, 104 S.Ct. at 2054. When reviewing the effectiveness of appellate counsel, the relevant question is whether the argument the petitioner asserts should have have been made was "sufficiently meritorious such that...counsel should have raised it on appeal." Phillips, 210 F.3d 345, 348 (5th Cir.2000). "Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was PLAINLY STRONGER than those actually presented to the appellate court." Davila v. Davis, 137 S.Ct. 2058, 2067, 198 L.Ed. 2d 603 (2017)(citing Robinson, 528 U.S. 259, 288, 120 S.Ct. 745, 145 L.Ed. 2d 756 (2000).

Appellate counsel in this case raised NO claims of error as the result of trial error. Counsel raised a single claim of pretrial denial of speedy trial, and that was inadequately briefed with improper facts listed. See State habeas grounds 6-10. Truly, the appeal submitted by appellate counsel amounted to an Anders Brief as it raised no trial error claim, though several meritor- ious claims existed, as was raised by defendant with counsel. (See Respondents acknowledgement of issues raised with counsel in Answer pg. 10); See also Lombard v. Lynaugh, 868 F.2d 1475 (5th Cir.1989)(Appellate counsel ineffective for filing of conclusory "no merits" brief (when nonfrivolous issues ex- isted) which pointed to nothing in the record constituted a constructive denial of any assistance of appellate counsel for which no showing of prejud- ice is required).

PROSECUTOR'S ARGUMENTS IMPROPER AND AMOUNTED TO EVIDENCE OR
TESTIMONY FROM PROSECUTOR IN VIOLATION OF DUE PROCESS BY CALLING
ATTENTION TO DEFENDANTS SILENCE
(Fed. Writ Ground 27-Related to Ground 16)(State Habes Ground 29)

State prosecutor brouhgtin her own testimony as evide4nce (which was
never testified to or introduced at trial). In one instance, the prosecutor
stated "Defendant and investigator talked. Georgie Pooh didntt come up then;
this random man who may have done it." (RR V7 p46). In another instance, "so u
if you're wondering whether or not why there may not be a lease, wonder if you
your friends give a lease [to investigators] if you're being charged..." (RR
V7 p37), and improper opinion and speculation also commenting on silence (i.e.
what was not given to investigators). Additionally, State's witness Sgt. M
Hunter supplied false impression testimony implying that applicant admitted to
guilt during a recorded phone conversation between he and the defendant. (RR
V6 p97). State argued in support of this false inference in closing arguments.
(RR V7 p41-42), which implied self-incrimination. Respondent even conceded
self-incrimination to be the likely inference of the jury. (See Resp. Answer
p44). All of these assertions by the state were improper argument and called
attention not only to defendants silence but also implied self-incrimination
in violation of due process and the Fifth Amendment.

LEGAL ARGUMENT

The limitations on the prosecutor injecting his actions and opinions into
the case was emphasized in Hodge v. Hurley, 426 F.3d 368, 378 (6th Cir.2005)g.
Quoting United States v. Young, 470 U.S. 1, 18-19 (1985), the Court observed,
"[t]he prosecutor's opinion carries with it the imprimatur of the Government
and may induce the jury to trust the Government's judgement rather than its ow
own view of the evidence." In Hodge, the Court reversed for prosecutorial mis-
conduct in part because the conviction rested almost entirely on the witness
the prosecution bolstered.

Circuit Courts have recognized that a prosecutor may not comment concern-
ing the uncontradicted nature of the evidence when "it is highly unlikely that
anyone other than the defendant could rebut the evidence." United States v.
DiCaro, 852 F.2d 259, 263 (7th Cir.1988). Ussery was the only person who could
have refuted or shed light on any of the improper arguments made by prosec-
utor.

Aside from the aforementioned authority on the prosecutor injecting impr-
oper opiniuons and arguments, Ussery relies on Doyle v. Ohio, 426 U.S. 610
(1976), Griffin v. California, 380 U.S. 609 (1965), and Malloy v. Hogan, 378
U.S. 1 (1964), for the contention prosecutors cannot comment on a defendants

57

silence or failure to testify.

In Doyle, "in an effort to undercut the explanation [of the accused], the prosecutor asked each petitioner at his trial why he had not told the framing story to Agent Beamers when he arrested petitioners," 426 U.S. at 613.

The Supreme Court ruled "it would be fundamentally unfair and a depriv- ation of due process to allow the [accused]s] silence to be used to impeach an explanation subsequently offered at trial." 426 U.S. at 618.

Mr. Justice White, concurring in United States v. Hale, 422 supra at 182- 183, 45 L.Ed. 2d 99, 95 S.Ct. 2133, put it this way:

"it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence [when defendant had spoken to investigators]...and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial... Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial."

Doyle highlights the exact scenario present in Hale as is present in the instant case: prosecutor commented on what the defendant did NOT say [or provide] to investigators.

Ultimately, the Supreme Court has decided in Griffin v. California, that the Fifth Amendment, "forbids...comment by the prosecution on the accused's silence..." ,380 U.S. at 615. A comment on the defendant's failure to testify violates the self-incrimination clause of the Fifth Amendment made applicable to the states by way of the Fourteenth Amendment in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964).

Without question it is unacceptable for a prosecutor to discharge a def- endant of his constitutional right to silence. "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." Bordenkircher v. Hayes, 434 U.S. 337, 365, 98 S.Ct. 863 54 L.Ed. 2d 604 (1978); see also Griffin v. California, 380 U.S. 609, 615, 88 S.Ct. 1229, 14 L.Ed. 2d 106 (1965). The Fifth Amendment forbids... comment by the prosecutor from suggesting to the jury that it may treat the defendant's silence as substantive evidence of guilt. Baxter v. Palmigiano, 424 U.S. 308, 319, 96 S.Ct. 1551, 47 L.Ed. 2d 810 (1976); see also Fortundo v. Agard, 529 U.S. 61, 65, 120 S.Ct. 1119, 146 L.Ed. 2d 47 (2000)(describing "the rationale of Griffin as prohibiting "comments upon a defendant's refusal to testify").

The state's comments and false impression representations were meant to highlight defendant's failure to testify and highlighted that defendant was the only person who could refute the comments, allowing fpor an unfair, in- ference of defendant's silence. The comments also undermined petitioner's

defense of mistaken identity (See Defense Closing Arguments), and also implied that the defendant confessed, violating his right against self-incrimination.

It is said however, that the inference of guilt for failure to testify as to facts peculiarly within the accused's knowledge is in any event natural and irresistable, and the comment on the failure does not magnify that interest into a penalty for asserting a constitutional privelege." Griffin v. California, 380 U.S. at 614 (citing People v. Modesto, 62 Cal. 2d 436, 452-453, 398 F.2d 753, 762-763).

## STANDARD OF REVIEW

In a habeas proceeding, the standard of review is whether the prosecutors remark "so infected the trial with unfairness as to make the resulting prejudice a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed. 2d 431 (1974); Jones v. Estelle, 622 F.2d 124, 1278 (5th Cir.) cert. denied, 449 U.S. 996, 101 S.Ct. 537, 66 L.Ed. 2d 295 (1980).

It is well established that failure to comply with a state's contemporaneous objection rule will preclude habeas review absent a showing of cause for non-compliance with the rule and actual prejudice resulting from the alleged constitutional violation. Wainwright v. Sykes, 433 U.S. 72, 86-88, 97 S.CT. 2497, 2507, 53 L.Ed. 594 (1977). In Texas, "the general rule is that any impropriety in the state's argument is waived by a defendant's failure to make a proper and timely objection." Romo v. State, 631 S.W. 2d 504, 505 (Tex.Crim. App.1982).

In deciding whether the merits of [Ussery's] claim[s] are properly before the Court, [the Court] must be mindful the question is not one XXX of federal power, but of equitable discretion. Francis v. Henderson, 425 U.S. 536, 96 S. Ct. 1708, 1710, 48 L.Ed. 2d 149 (1976); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 826-27, 9 L.Ed. 2d 837 (1963); The issue in the case at bar is not jurisdictional whether considered as a problem of exhaustion of state remedies, Ballard v. Maggio, 544 F.2d 1247 (5th Cir.1977), or as one of state procedural default. Francis v. Henderson, 97 S.Ct. at 2502-04 (distinguishing between exhaustion requirement and state procedural bar).

The Fifth Circuit has utilized at least two different test for errors of improper commenting by prosecutors. "Ordinarily, the test for determining whether the prosecutors remarks were constitutionally impermissible is: (1) whether the prosecutor's manifest intent was to comment on the defendant's silence or (2) whether the character of the remark was such that the jury would naturally and necessarily construe it as a comment on the defendant's silence." United States v. Bouchot, 625 F.3d 892, 901 (5th Cir.2010).

"A proseutor is prohibited from commenting directly or indirectly on a defendant's failure to testify or produce evidence," United States v. Johnson, 822 Fed. 258 (5th Cir.2020). And "In reviewing a claim of prosecutorial miscon duct this court employs a two-step analysis." United States v. McCann, 613 F. 3d 486, 494 (5th Cir.2010). We first determine whether the remark affected the defendant's substantial rights. Id. When the defendant does not object to the disputed remark, as in this case, we review for plain error only, which req- uires him to show werror that is <u>clear and obvious</u> and affects his substantial rights. United States v. Garcia, 522 F.3d 597, 599-600 (5th Cir.2008). If the defendant makes such showing, we have the discretion to correct the error and should do so if it seriously affected the fairness, integrity, or public rep- utation of judicial proceedings. Puckett v. United States, 566 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed. 2d 266 (2009).

The Respondent in state post-conviction proceedings did not contest that the contested remarks and arguments were made, but instead denied the merits of the related IAC claim for failure to object based on petitioner not estab- lishing harm; Because State has first relied on this contention that petition- er must establish harm, petitioner would prefer to observe that the burden would then be on the Respondent to establish that adverse comments by the pros ecutor was in fact harmless beyond a reasonable doubt based on Chapman v. California, 386 U.S. 18 (1967).

However, the Supreme Court has ruled in Brecht v. Abrahamson, 507 U.S. 619 (1993) that Constitutional errors of the trial type on collateral review must be reviewed under the harmless error review standard set forth in Kott- eakos v. United States, 328 U.S. 750, 776, 90 L.Ed. 1557, 66 S.Ct. 1239, i.e., whether the Doyle or Griffin violations "had substantial and injurious effect or influence in determining the jury's verdict."

In Brecht, the Court decided the Doyle error did not "substantially in- fluence" the jury's verdict within the meaning of Kotteakos, since the record, considered as a whole, demonstrated that the State's references to Brecht's silence were infrequent and were, in effect, merely cumulative of the exten- sive and permissible references to his silence; that the evidence of his guilt was, if not overwhelming, certainly weighty; and that circumstantial evidence also pointed to his guilt.Thus, Brecht was not entitled to releif.

In contrast[1] the remarks complained of by Ussery were not permissible, undermined and contradicted Ussery's defense of mistaken identity, implied (falsely) that Ussery had confessed guilt, and yet not only was evidence not overwhelming, there was absence of any circumstantial evidence, and indeed

60

NO EVIDENCE remained to support guilt of any offense PRIOR to Sept. 1, 2007 ▩▩
AND the jury returned the verdict on the Special Issue that the State failed
to prove an offense was committed on or after Sept. 1, 2007. (RR V10 p107);
Though the alleged offense date was January 27, 2008 and the testimony only
comported with a date of 2008 or later. See Facts presented, Ground 5 of State
habeas application. Facts presented in Ground 5 will establish so much conflic
ting testimony (i.e. defendant lived in House; complainant described upstairs,
single-floor apartment for alleged incident) as to show the impossibility that
defendant committed alleged act at all. Further consideration should be given
to the seriousness of the submitted faulty reasonable doubt instruction.

Furthermore, implicit in the jury's verdict on the special issue is that
the jury did not find the state's primary and complaining witness' credible
. See Self v. Collins, 973 F.2d 1198 (5th Cir.1992)(relying on Lavernia v.
Lynaugh, 845 F.2d at 500)("When...a trial court fails to render express findin
ings on credibility but making a ruling that depends upon an implicit determ-
ination that credits one witness' testimony as being truthful, or implicitly
discredits another's, such determinations are entitled to the same presumption
of correctness that they would have been accorded had they been made explic-
itly").

Petitoner further relies on Brecht v. Abrahamson, 507 U.S. 619 (1993), as
the Court tentatively announced an exception to the "substantial effect" rule:

"Our holding does not foreclose the possibility that in an unusual case,
a deliberate and especially egregious error of the trial type that is committe
ed with a pattern of prosecutorial misconduct, might so infect the integrity
integrity of the proceedings as to warrant the grant of habeas relief, even if
it did not "substantially influence" the jury's verdict. Cf. Greer v. Miller,
483 U.S. 756, 769 (1987) Id. at 638 n.9.

There may be extraordinary cases in which the error...is so egregious or
is combined with other errors or incidents of prosecutorial misconduct, that
the integrity of the proceedings is called into question. Greer, 483 U.S. at
768-69. Cf. Brown v. Illinois, 422 U.S. 590, 604 (1975)(in assessing taint of
4th Amendment violations, "purpose and flagrancy of...official misconduct are
./...relevant").

The instant claim should suffice to establish a pattern of improper argu-
ment and improper commenting on defendant's silence and/or attempt to induce
the jury to infer self-incrimination, infringing on the substantial rights of
the defendant protected by the Fifth Amendment. However, this ground can and
should be considered in conjunction with the prosecutorial misconduct claims
of Ground 14, either of which themselves establish a pattern, with Ground 14
establishing a pattern of due process violations with the knowing presentation

of false evidence.

Though either of these grounds can be considered independantly to est-
ablish reversible errors, certainly these taken together makes the determin-
ation a foregone conclusion that defendant did, in fact, suffer a denial of
due process.

It should also be noted, that as to responding to this specific prosecu-
torial misconduct claim, Respondent seems to have not addressed it with a
merits review or otherwise. (See Respondent's Answer pg. 55). Accordingly,
petitioner believes he can jump any hurdle to review in federal court even
absent a showing of cause and prejudice or being limited to only a plain error
review based on Harris v. Reed, 489 U.S. 255 (1989), which established a plain
statement rule for state decisions; if state court decision does not plainly
state that its decision rests on an independent and adequate state grounds,
then the decision does not preed preclude federal review.

62

TRIAL COURT ERROR AND/or INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL
FOR FAILURE TO RAISE TRIAL COURT FAILURE TO HOLD FARETTA HEARING
(Ground 28-Fed.Writ(Ground 30 State Writ)

State's sole reason for denial of trial court error claim for failure to
hold Faretta hearing was predicated on asserting that Ussery did not unequiv-
ocally request a Faretta hearing by motion.(See Resp. Answer pf.24-27). This
is factually incorrect as Ussery provided Appendix D, E, and F in his State
habeas application with reference to those appendices. (See Ground 30, State
Habeas facts summary). Thus, Respondent rested on an incorrect summation of
the facts and this should be revisisted by this court.

Respondent also concedes that Ussery did request Appellate Counsel to xxi
raise claim that trial court did not hold a Faretta hearing (See Resp.Answer
pg.10-11), however, Respondent claims the issue of IAC of Appellate Counsel is
unexhausted and procedurally barred. Id. Ussery though raises the IAC of App-
ellate Counsel not just as a claim but as cause to excuse default to review of
any such claim.

## LEGAL ARGUMENT

Applicant submitted a Motion To Proceed Pro Se and Access To Law Library
and Appointment of Counsel (Stand-by)(See State habeas Appendix D-1). See
United States v. Hill, 526 F.2d 1019, 1025 (10th Cir.1975)(while a defendant
does not have a constitutional right to hybrid counsel, the lack of that right
"does not foreclose a trial judge from allowing hybrid representation in app-
ropriate cases); see also Freeman v. Pierce, 878 F.3d 580 (7th Cir.2017)(A
request to proceed pro se that is accompanied by a request to appoint stand-by
counsel does not make that request equivocal). In fact, Faretta [v.California,
424 U.S. 806] explicitly contemplates that a defendant can both invoke the
right to self-representation and request standby counsel.

State's witness Allen Otto (original prosecutor) even testified that he
was aware defendant requested self representation and a Faretta hearing and he
though it might be important to get a waiver. (RR V2 p.21).This is clear evi-
dence the court and state were on notice of this request AND that no waiver of
the right was given. Defendant also motioned pretrial for Speedy Trial, Bail
Reduction, and Motion ToWithdraw Counsel's Authority to Agree To Delays (App-
endix F-2, F-3, F-4, F-10, F-11), which becomes evidence that trial counsel an
and defendant disagreed on a line of strategies. Trial counsel even placed on
record that he and defendant disagreed on a line of questioning. (RR V6 p.244)
Counsel attempted toput on record defendant's acquiescence to his strategy and
advice but defendant was FIRM he didd NOT "agree with [his attorney] at all."
(RR V6 p.245).Questions pertained to defense of mistaken identity and Jorge

63

Fernandez, the person defendant believes committed the crime. (RR V6 p244,et. al.).(See also defense closing arguments on mistaken identity).

After notice of appeal, Ussery even requested a new trial, before appoint ment of Appellate counsel based on request to represent himself being ignored by the court. (See App. E-1, state habeas). The trial court failed tohold the requested hearing just as counsel failed to request it; similarly considerat- ions were made in a Georgia case which accurately outlines the issues here: "The defendant's request to proceed pro se was virtually ignored by the trial court and counsel prior to trial, and relying on appellant's silence at the start of trial, the trial court assumed appellant had waived his previous- ly asserted right. Under these circumstances, and especially because there was no affirmative evidence that applicant waived or equivocated in his desire to proceed pro se, the court held that mere silence was insufficient to est- ablish a knowing and intelligent waiver of his already invoked right to self- representation." Wiggins v. State, 298 Ga. 366, 782 S.E. 2d31 (Ga.2016).

Ussery was entitled to a Faretta hearing based on Faretta v. California, 424 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed. 2d 562 (1975). A court cannot force counsel on an unwilling defendant. United States v. Moreland, 604 F.3d 1058, 1066 (9th Cir.2010). The denial of self-representation is not subject to harmless error analysis.United States v. Arlt, 41 F.3d 516, 524 (9th Cir. 1994) and requir[es] automatic reversal. Wilson v. Walker, 204 F.3d 33, 37 (2d Cir.2000).

Exhaustion Met

The U.S. Supreme Court has articulated a standard for determining what constitutes sufficient exhaustion. Fay v. Noia, 372 U.S. 391, 428, 83 S.CT. 822, 9 L.Ed. 2d 837 (1963). The Court held that a federal claim [that] must be fairly presented to the state court be the "substantial equivalent" of the claim asseerted in a federal habeas petition. Picard v. O'Connor, 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed. 438 (1971). The Court in Picard carefully noted that "(we) do not imply that Respondent could have raised the (const- itutional) claim only by citing book and verse on the federal constitution... we simply hold that the substance of appellant's claim first be presented to the state courts. Id. A determination of whether the substance of app- ellant's claim was advanced in the State proceedings requires "a scrutiny by the federal habeas court of the POINTS (emphasis added) that were raised in the state tribunals in order to ensure that the state system was granted a fair opportunity to confront arguments that are propounded to the federal habeas courts. Zicarelli v. Gray, 543 F.2d 466, 472 (3d Cir.1976).

The fact that the State court of appeals failed to address the issue does not preclude a finding of exhaustion. See Smith v. Digmon, 434 U.S. 332N, 54 L.Ed. 2d 582, 98 S.Ct. 597 (1978).

The "substance of claim" requirement is not just predicated on what was case law supports a petitioners contention but instead whether or not the claimed deprivation (right to represent self) has changed in substance and that the "method of analysis" asserted in federal court (Faretta) was readily available in state court." Stanley v. Illinois, 405 U.S. 645, 658 n.10, 31 L.ED. 2d 351, 92 S.CT. 1208 (1972). Within the contours of a particular argument, however, not every detail need have been put before the state court in order to present all facts of the argument to the federal courts on a petition for habeas. Smith v. Geogia, 415 U.S. 566, 576-77, 39 L.Ed. 2d 605, 94 S.Ct. 1242 (1974)(dictum) Accord United States ex rel Johnson v. Johnson, 531 F.2d 169, 173 (3d Cir.1976), Lombarti v. Wainwright, 513 F.2d 277, 283 (5th Cir. 1975); Bryant v. Caldwell, 494 F.2d 65, 66 (5th Cir.1973), cert. denied, 415 U.S. 981, 39 L.Ed. 2d 578, 94 S.Ct. 1572 (1974).

The purpose of exhaustion is not to create a procedural hurdle on the pak path to federal habeas court, but to channel claims into an appropriate forum, where meritorious claims may be vindicated and unfounded litigation obviated before resort to federal court." Keaney v. Tamayo-Reyes, 504 U.S. 1, 112 S.Ct. 1715, 188 L.Ed. 2d 318, 320 (1992).

Additionally, petitioner can pursue the claim in federal court if he can show "cause" for the default and "prejudice" resulting from it. Edwards v. Carpenter, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed. 2d 518 (2000). "[C]-ounsel's ineffectiveness in failing to properly preserve the claim for review in state court will suffice to establish cause. Id. This same conclusion was reached for IAC of TRIAL counsel claims in Martinez v. Ryan, 566 U.S. 1 (2012) if in post-conviction proceedings counsel was ineffective or there was no coun sel in PCW proceedings. This was extended to cases in Texas in Trevino v. Thaler, 569 U.S. 413 (2013) where state procedural framework of Texas makes it impracticable KWX for appellate counsel to effectively raise claims on appeal that can be raised as IAC of trial counsel claims.

Petitioner is requesting for Trevino to be extended to claims unable to be addressed due to the wineffective assistance of PCW counsel where the Texas procedural framework again makes it impossible to adequately raise claims (in-cluding arguments for showing of cause to excuse defeaults such as IAC of appellate counsel claims) because PCW counsel is FORCED on you and your reqθes uest to proceed on your own is ignored; of course such a claim would have to be accompanied by grounds addressing claims calling the PCW proceedings into

question. In the instant case, petitioner raised Grounds 31-34 pertaining to his inability to adequately present his grounds and arguments in State PCW proceedings because of the failure of PCW counsel and how the state forced PCW counsel on the applicant.

Further, cause to excuse can be shown if counsel [on appeal or PCW] forwent a meritorious claim against the known wishes of his client. See, e.g., Clay v. Director, 749 F.2d 427, 430-32 (7th Cir.1984), cert. denied, 471 U.S. 1108 (1985); see also Smith v. South Carolina, 882 F.2d 895, 898 (4th Cir. 1989), cert. denied, 493 U.S. 1046 (1990); Clemmons v. Delo, 100 F.3d 1394, 1398-99 (8th Cir.1996), such as in this case where appellate counsel failed to raise claim on appeal. See Orazio v. Dugger, 876 F.2d 1508 (11th Cir.1989)(Appellate counsel rendered IAC by failing to raise on appeal a Faretta claim, the right to voluntarily elect self-representation). But for failure of appellate counsel or PCW counsel, result of either proceeding would have been different.

For IAC on appeal claims a petitioner must satisfy the two pronged test enunciated in Strickland, 466 U.S. at 687. See Smith v. Robbins, 528 U.S. 259, 286 (2000). Thus Ussery must [and has] demonstrate[d] appellate counsel was deficient, and that the deficiency prejudiced his case. Strickland 466 U.S. at 687. To demonstrate deficiency, he must show that, "counsel unreasonably failed to discover [and raise] nonfrivolous issues." Smith, 528 U.S at 286. And to prove prejudice, Ussery must [and has] also show[n] that, but for counsel's deficient performance, "he would have prevailed on appeal." Id. Appellate counsel "Declining to raise a claim on appeal...is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court." Davila v. Davis, 137 S.Ct. 2058, 2067 (2017). In the instant case, "[t]here is a reasonable probability that, but for counsels unprofessional errors, the result of the [appeal] would have been different." Sharp v. Puckett, 930 F.2d 450, 453 (5th Cir.1991). Even aside from the the IAC of Appellate Counsel claim, this claim can still be reviewed as trial court error, as reviewed by the state Respondent in Answer, and despite state's denial on merits due to a clearly erroneous consideration and application of the facts to the case or thoise evidences presented by the petitioner in his state petition.

PETITIONER IS ACTUALLY INNOCENT OF CHARGED AND CONVICTED OFFENSE:
ALTERNATIVELY COUNSEL INEFFECTIVE FOR FAILURE TO REQUEST DIRECTED VERDICT
(Ground 30)

"[A] claim of 'actual innocence' is not itself a constitutional claim,
but instead a gateway through which a habeas petitioner must pass to have his
otherwise barred constitutional claim considered on the merits." Herrera v.
Collins, 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed. 2d 203 (1993). The
Supreme Court has adopted a three part test for determining whether this
standard has been met: there must have been a constitutional error, the error
must have XXXXXXXXXXXXX had a probable XXXXX effect on the jury's determinat-
ion, and it must be probable that the constitutional violation resulted in the
conviction of an innocent person. Herrera, 506 U.S. 390, 402-403.To satisfy
the third element, the petitioner must make a colorable showing of factual inn
ocence. In other words, the petitioner must demonstrate the existence of "at
least sufficient claims and facts that---had the jury considered them---prob-
ably would have convinced the jury that the defendant was factually innocent."
Romero v. Collins, 961 F.2d 1181, 1189 (5th Cir.1992)("claim raises at best
legal error, short of actual innocence"). It is sufficient under this standard
that the petitioner had an affirmative defense, like insanity or necessity,
that the jury likely would have found to exist. See Finley v. Johnson, 243 F.3
d 215, 221-222 (5th Cir.2001)(petitioner satisfied actual innocence exception
by establishing that had necessity defense been presented, he would likely
have been acquitted).

Petitioner did in fact present a defense in the sentencing phase---for
which he prevailed in the Special Issue. (See RR V10 p.107). However, the def-
endant was improperly restricted from presenting that defense in the guilt
phase by Tex.CCP 37.07.

This defense was required to be raised in the sentencing phase due to
the mandatory requirements of the collective statutes. See Tex. P.C. 22.021
(f)(1); Gov't Code 508. 145. The Special Issue asked of the jury was "Do you
unanimously agree...that the state has proven beyond a reasonable doubt the
defendant committed offense on or after Sept. 1, 2007?" The jury's verdict was
"We Do Not." (RR V10 p.107). The alleged offense date was January 27, 2008.
See Indictment. The enactment date of the charged offense was Sept. 1, 2007.
See Acts 2007, 80th Leg. ch.593. Not only did petitioner prevail on this def
ensive issue, but it was used to improperly shift the burden of proof to the
defendant by allowing the instruction to operate as a mandatory presumption
that an offense WAS proven beyond a reasonable doubt PRIOR to Sept. 1, 2007;

66 A

However, NO EVIDENCE remained in the record to support this. See Facts present
ed, Ground 5, State Habeas Application. It is obvious that, had the Special
Issue defense been presented in the guilt-innocence phase, petitioner Will
likely have been acquitted." Finley, 243 F.3d at 221-222. See Ring v. Arizona,
536 U.S. 584, 153 L.E. 2d 556, 122 S.Ct. 2428 (2002)(the Court held it was
impermissible for "the trial judge, sitting alone" to determine the presence
or absence of the aggravating factors).

### Test For Granting Review of Claim

The Supreme Court explained in Schlup v. Delo , a claim of actual innoc-
ence coupled with the alleged constitutional violation entitles the petition-
er to have the merits of the claim considered if the petitioner "raise[s]
sufficient doubt about his guilt to undermine confidence in the result of the
trial without the assurance that" the trial was free of error, or he presents
"evidence of innocence so strong that a court cannot have confidence in the
outcome of the trial unless the court is also satisfied that the trial was
free of non-harmless constitutional error." Schlup v. Delo. 513 U.S. 298. 316.
115 S.Ct. 851. 130 L.Ed. 2d 808 (1995).

The Special Issue instruction given in the wrong phase--as required by
Statute--was an unconstitutional reasonable doubt instruction. Faulty Reas-
onable Doubt Instructions are not subject to harmless-error analysis. See
Sullivan v. Louisiana. 508 U.S. 275 (1993). In Sullivan. the United States
Supreme Court found that an unconstitutional "reasonable doubt instruction Was
was not harmless error because the Sixth Amendment requirement that the jury
Verdict be guilty "beyond a reasonable doubt" was not fullfilled. Thus.
although a judge may direct a verdict for the defendant if the evidence is
legally insufficient to establish guilt. he may not direct Verdict for the
State. no matter how overwhelming the evidence. See Sparf v. United States.
156 U.S. 51. 105-106. 39 L.Ed. 343. 15 S.Ct. 273 (1895); see also U.S. v. R
Martin LinenSupply Co.. 430 U.S. 564. 572-573. 51 L.Ed. 2d 642. 97 S.
Ct. 1349 (1977); Carpenters v. United States. 330 U.S. 395. 410. 91 L.Ed. 978.
67 S.Ct. 775 (1947).

Furthermore. as established by Ground 2. Petitioner's conviction Was
obtained in violation of Double Jeopardy in that a second consideration for
conviction of an uncharged offense occurred after an acquittal had already
resulted from the verdict on the Special: Issue. See Bravo-Fernandez v. Uni-
ted States. 580 U.S. 5. 8. 137 S.Ct. 352. 196 L.Ed. 2d 242 (2016)(and acqui-
ttal is till an acquittal even "when a jury returns inconsistent verdicts.

66B

convicting on one count and acquitting on another count. where both counts turn on the very same issue of ultiamte fact").; see also Sanabria v. U.S.. 437 U.S. 54. 98 S.ct. 2170. 57 L.Ed. 2d 43 (1978)(Double Jeopardy Clause barred giving the Government another chance to prove defendant's guilt on ANOTHER THEORY).

66C

VERIFICATION/INMATE DECLARATION

I am an inmate in  an institution. Today I placed a copy of this supplement of 67 total pages in the mail by placing it in the indigent law library system

I declare under penalty of perjury that the information contained ☒ in ☒☒ this supplement is true and correct. 28 USC 1746.

ᴣᴛᴛᴛᴛᴛᴛᴛ

PRAYER

Wherefore, premises considered, petitioner prays this court will accept this supplement and allow for the possibility that an attorney will/may contact this court soon to take over the case; or allow for stay pending any future case that gets joined. There azre some serious claims here and I want to make sure everyone gets an opportunity to not be found at fault, however, I do not know the best resolution for such considerations and need advice; Otherwise, Petitioner prays that this court handle the issues raised in this writ as best might be the will of a higher authority, as well as any other relief to which petitioner may be entitled; ᴍᴀᴛᴛᴛᴛᴛ However, petitioner prays this courtr NOT initiate or allow for a civil judgement ☒ ʲᵗe executed related to this case yet because there seems to be some fraud going on at this facility, some unfair collection practices, and prevention of contact for petitioner and any outside help, putting him at a SEVERE disada vantage.

Kind Regards,

Roy Eugene Ussery
TDCJ ID NO 02204802
W.P. Clements Unit
9601 Spur 591
Amarillo, TX 79107

EXECUTED on this the 18ᵗʰ day of May , 2025.

Signed: ᴛᴛᴛᴛ
         Roy Ussery

67

IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS

Roy Eugene Ussery,
   Petitioner

v.

Bobby Lumpkin, TDCJ Director
   Respondent

§
§
§
§

Cause No. 4:22-cv-03614

Judge CharlesEskridge

GENERAL NOTICE OF INABILITY TO MAIL PACKET ON MONDAY

To The Honorable Judge Of This Court

 This is a note to state that petitioner attempted to mail in this completed amendment/supplement on Monday May 19, 2025, and specifically sent a request for the library to call petitioner in to mail packet in large envelope. The law library did not call in petitioner either that day nor the following two days. Another attempt is being made today for mailing tomorrow. However, the delay from Monday to Friday is not attributable to the petitioner.

     Kind Regards
     Roy E. Ussery,

VERIFICATION/INMATE DECLARATION

 I am an inmate in an institution. Today I placed a copy of this letter and the noted packet in the mail by placing it in the unit mailbox/requesting the law library to call petitioner in to mail it.

 I declare under penalty of perjury that the information included in this note is true and correct. 28 USC 1746.

EXECUTED on this the 22nd day of May , 2025.

     Signed:
     Roy Ussery
     #02204802
     W.P. Clements Unit
     Amarillo, TX 79107

 Note: The updated packet has some important grounds; The most noteable of which are : 20, 2, 12, 22, 23, 18, and several others that establish petitioner's innocence such as 1, 4, 5, 11, and 30. However, petitioner is confident that many of the claims mentioned here can still be considered along WITH another ground, Ground 3, for which petitioner has not had time to develop completely as he has manyu of the other claims. Possibly just as - Important are Grounds 16, 4, 19, 13 and others.

Ron Ussery
W.P. Clements Unit
9601 Spur 591
Amarillo, TX 79107

United States Courts
Southern District of Texas
FILED
JUN 04 2025
Nathan Ochsner, Clerk of Court

Judge Charles Eskridge
U.S. Dist Ct Of for the
Southern Dist of Texas
P.O. Box 61010
Houston, TX 77208

